Judge Ewing
delivered the opinion of the Court.
Robert M. and William Steele drew bills on Richard Steele, which were accepted by him, in favor of McDonaid and Taylor, for four thousand and forty-two dollars* payable the 15th of December, 1822; for four-thousand and forty-two dollars, payable the 1st of February, 1823, and for three thousand dollars, payable the 1st of October, 1823; and William Steele, on the 20th of February* 1823, by deed of trust, conveyed to John Edwards, in trust, for the indemnity of' said Richard, a valuable es-i, tate.
On the 18th day of October, 1823, said Richard Steele, by deed of trust, conveyed to John Rowan, as trustee, certain estate, to indemnify him and various other per-, sons for certain responsibilities for him; and in said; deed, conveyed and set apart, specially, the south half of lot No. 185, exclusively to secure McDonald and Taylor any balance that may be due them from R. M. and WiK liam Steele, for which said Richard Steele had become liable by acceptances.
Judgments at law having been recovered, on two of said bills, against Richard Steele, for the amounts and current interest, and executions returned no property found, McDonald and Taylor filed their bill against Richard Steel, and the heirs of William Steele, upon an alie* *446 gation of his insolvency and death, and that no administration was granted on his estate, and others; which, by-amendment, brought John Rowan before the Court, praying a foreclosure and sale of the property conveyed by William Steele, to Edwards, and also the south half of the lot conveyed to Rowan, in satisfaction of said three bills, and interest and costs.
Richard Steele, for himself, and as guardian ad litem for the infant heirs of William Steele, answered the bill— setting up various payments and credits, and, among others, a credit for a claim of nine thousand dollars on Breedlove, Bradford and Robinson, assigned by Steele, Donely and Steele, to the complainants, to be collected by them, and applied towards the payment of said bills; and alleging that, “by the terms of said transfer and ass' signment, the said complainants were authorized to set- “ tie said claims with said Breedlove, Bradford and Robs' inson, on the best terms in their power, deducting from S' said claim, all the expenses attending the collection of SS it, and that said complainant, McDonald, afterwards, S', on the 26th day of March, 1825, settled the said claims S' with said Breedlove & Co. and took notes payable to S'himself, for the sum of $5641 68 cents”—and claiming a credit for that amount: which answer he makes a cross bill,
McDonald and Taylor answered the cross bill of Steele, and exhibit the assignment of said claim, and the authority to settle it, and allege that they did make the best arrangement with Breedlove & Co. that could be made, and took the notes of said Breedlove and Robinspn, fpr the sum of $5641 68, payable by instalments, at one, two, tlu’ee, four and five years; and finding, after-wards, that they were likely to fail, took from them salt, at 51 high price, at New Orleans, for said notes, fi’om which they netted only about two thousand seven hun. dred dollars, and contend that, this is the only sum for which said Steeles are entitled to a credit.
The Court, on a final decree, allowed a credit of two thousand seven hundred and fifty dollars, as paid the 20th pf April, 1825, on account of the salt, received and sold, fp,r the four last potes, and nine hundred and seventy- *447 five dollars, as paid the 26th of December, 1825, in cash, for the first note—making in all, three thousand seven hundred and twenty-five dollars; on account of the whole of the notes taken from Breedlove & Co.; and also, allowed to the complainants, running interest—applying the credits, first to the extinguishment of interest due on all the bills; and then to the payment of the principal; and decreed in favor of the complainant Taylor, (McDonald having died,) a balance of four thousand one hundred and seventeen dollars, with interest thereon from the 16th of September, 1826, till paid, and costs.
t>emands fo'i $9000, are put into the hands of agents, who are authorized “to settle them on the best terms in their power.” The demands are disputed, ahd a suit pending upon them, the result of which is doubtful; and) finally, the agents, upon good advice, compromise with tile defendants, and take their notes, to the amount of $5041, at 1,2, 8, 4 and 5 years, in full. And, for tbosenotes,or all but one, the a* gents afterwards fake salt, at a high rate, and which they sell —the neat proceeds being $2,-700 only. Held, that the agents, havingactedwith good faith, and apparently with sound discretion, in both transactions—cannot be made accountable for the original demand of $9000, nor for the nominal amount of the notes received for it; but shall be held liable for the neat proceeds, as it finally came to their hands, in money, only.
Steele, having paid three thousand dollars of the amount, has appealed to this Court.
It is first urged that, the whole niile thousand dollars should have been allowed as a credit.
We think there is no pretence for this claim. The complainants were vested with full power to settle the claim “on the best terms in their power, deducting from said claim all expenses attending the collection.” The claim appears to have been unliquidated, and a suit was then depending for it, in Nashville, against Robinson, one of the firm, and was pertinaciously defended, and a strong prospect of the defendant defeating the recovery as to a considerable amount of the sum claimed. Besides which, it was what Breedlove & Co, termed an old claim—since the accrual of which, the firm had failed; and though they had recommenced business, they were resolved not to embarrass their new business with their old liabilities, and it was altogether doubtful whether payment could be coerced, though they were regarded as honorable men, who would faithfully comply with any new terms Voluntarily stipulated by them.
. Under these circumstances, and in pursuance of the .best advice they could receive from a consultation with honorable gentlemen, who were believed to be the best acquainted with the condition of said firm, as well as the principles of their action, they were induced to accept a compromise of said claim, made by their lawyer, by *448 which said notes were given, the said firm paying the at* torney of the complainants his fee;
A party cannot dua*in"adjusting a balance against decreé!rftir tnore than he claims in his pleadings,
If it Were conceded that the agents, in the case supra, when they had made the compromise and received the notes, had exhausted their power, & should therefore be accountable for the notes—still, in that respect, they should be deemed trustees; and having acted in good faith, and not imprudently, they should be held accountable, not for the nominal amount of the notes, but only for their actual value, at the time when they were received— Which,it appears, was less than the salt sold for.
We cannot, therefore, believe that the complainants have bteen guilty of any breach of trust or confidence reposed in them by the terms of their authority; which ought to subject them to any damages or loss, or to the credit of the whole nine thousand dollars claimed; especially, as there is nothing exhibited in this record, to ’show that the whole sum, or any part of it, could have been recovered by persevering in the prosecution of said suit.
Besides, it seems that Steele, in his answer and cross bill, sanctions the settlement that was made, and sets up a claim, only, to the amount of the notes received, as a credit. We could not, according to any just principle, or propriety, allow him a credit for more than he asks, be ever so strenuously contended for, as it has been, by the counsel in this Court.
Secondly. It is contended that, at any rate, a credit for the full nominal amount of the notes taken on the settlement, should be allowed;
Though it should be conceded, that the complainant’s granted powers, to Compromise and settle said claim, ceased with the completion of the first settlement, which is by no means clear; yet, the complainants oc^ cupied the condition of trustees for themselves and their debtor, and should not be made responsible for moré than they actually received, if they acted with a pru>dent, faithful and holiest view to the best interest of their debtor, and were guilty of no intentional default, willful neglect, or unadvised imprudence, in the disposition of the fund entrusted to them;
It seems that about the time that the second arrangement was made, the firm of Breedlove & Co. were engaged in an extensive and hazardous business, as commission merchants, at New Orleans, and it was strongly suspected and believed by many prudent dealers, who were acquainted with them, that they would fail before the notes fell due. Under these circumstances, it was dictated by a wise prudence, to take salt, or any other *449 substantial, salable commodity, at good prices, for the notes, increasing the price, according to the remote day at which they were made payable as was, done in this case. And tiiat the net proceeds of a prudential sale of the commodity, should be the only sum for which the trustee should be chargeable.
But waiving the above view of the subject, as the complainants, upon the first settlement, did not receive cash, but notes payable at a distant day, he should clearly not be chargable with the nominal amount of the notes, but only with their vahe, at the time when they were receive ■ed, as he wou'd have been chargable with the value of ■any commodity or article of property, estimated at the time when it was received*,
If, therefore, the first compromise be sustained, and the complainants took to themselves notes payable at a future distant day, and are chargable with the amount received, as the proceeds of the amount of the claim as^ signed to them, its value should be estimated, and a credit only equivalent thereto, allowed, as of the date of the settlement.
Now, it is proven by one witness, who was acquainted with the firm of Breedlove & Co., that an arrangement by which fifty cents in the dollar were received, on a claim of some five or six thousand dollars, payable in one, two, three and four years, would be a very good arrangement; that he, the witness, would not have hesitated to receive that amount, about the time the second settlement was made, speaking in reference to old debts.
The amount allowed by the Circuit Court, greatly exceeds the amount that would be produced by a reduction according to the estimate of this witness.
But we cannot believe, that cash notes, upon a reason^ ably solvent firm, payable at a distant day, would be estimated to be worth more than their amount in cash, when reduced by a deduction of at least ten per cent. per annum. We are satisfied from some observation of transactions of this country, that cash notes would not generally command so much. Deducting ten per cent, per annum, from the amount, and it will reduce the notes to •an amount not much above the sum allowed by the Court,
Bills bear interest, by statute. The act directing that partial pay-meats shall he applied first to the interest, then is ippifcah!ePito' all “bonds, coní.n’i.'iíL a ney, goods or 6eareo/call‘foí interest, agreeably to the laws of this State.”
A judgment oredfor’theT debtor1 collects certain to^e’a'pplTedtowards the satisfaction of the judgments, of which he has several, all bearing interest; no turns bavin a been given by the debt funds toPPiny of them in particuhas a right to make the appliapplyr themmato the payment, first, of the interest accrued on all and tíed balance only, to the prinbonníi *to apply th,e funds to pay '■ as many entire 'judgments, principal and interest, as they will satisfy. The same rule should he adopted by a court of equity, in adjusting the cross demands, and tenderinga decree for tiie balance.
Upon the whole, therefore, taking into consideration the business and circumstances of Breedlove & Co. the distance of their residence and business from the residence of the parties in contest, and the distant day at which the notes were made payable, we cannot believe that the credit allowed by the Court, was too little.
Thirdly. It is contended that, no interest should be al]0Wed upon the bills, upon which it is alleged that judg» , 1 , 1 , . , ments have been recovered m damages, and that, it mterest be allowed, the payments as made, should not be _ ,. , . 1 *. . , - . , first applied to the extinguishment ot the interest; and T s0 aPPdedt it should not be applied first to the extinguishment of the whole interest due upon all the notes, but should be applied first to the extinguishment of the whole amount due on the first note, then of the second, and 30 of the tlnl'd"
The first objection is founded on a mistake of the facts. The judgments have been rendered in debt, and and for current interest.
We think it just and proper, that the payments should be applied first to the extinguishment of the interest. The case falls within the express provisions of the statute. Dills, by the statute, are made to bear interest. , ,. . , - And the rule directing payments to be jirst applied to t¡ie extinguishment of the interest, applies to “all bunds, ° ' 11 7 contracts or assurances^ lor money, goods, or property that ^ear or ca^ fcr i-nt'eresh agreeable to the laws of this State. 2 Slat. Law, 853; 1 Marshall, 584.
When payments have been made by the debtor, without designating the notes upon which he wishes the pay^ents to be applied, as m this case, we see no unpropriety in adopting the equitable rule prescribed by the spirit of the statute, and applying the payments so as .fírst to extinguish the whole amount of the interest due ,, , On all the notes.
When a debtor fails to make prompt payment of his -debt, the law has fixed a rate of interest that he shall 'P0^ as a reasonable compensation to the creditor for the *451 delay. And, as interest will not bear interest, though it be as justly due as the principal, the creditor is deprived of the use of the interest without compensation for it. It is, therefore, just and equitable, when the credit is left to be applied by the Chancellor, that it should be first applied to the extinguishment of the whole interest, or that portion of the fund, which is withheld by the debtor, that draws no interest.
Before a chancery cause is referred to an auditor, the principles should be settled, and appropriate instuctions should aocoinpany the reference. But for a preoiature reference, or for any irregularity in the intermediate! proceedings in a cause, there will, bo no reversal,when the final, decree is.substan-' tially correct.
Infant defendants1, must be summoned; answers by a guardian ad litem ,when they have not been summoned, will not do.
The drawer of a bill of exchange is a proper party to a suit to subject a trust estate of the acceptor to the payment of the bill.
It is next objected, that the Court erred in submitting the cause to an. auditor, without jfirs/ settling the principles involved, and giving appropriate instructions.
Though it is certainly most regular, and consistent with the proper mode of proceedings in equity, for the Chancellor first to settle the principles involved in the contest, so far as to be able to afford appropriate instructions to the auditor, and'to give those instructions; yet, for any irregularity in the intermediate steps, in the preparation of a cause for afina! decree, which can-, not prejudice either of the parties, the final decree being correct, the cause should, surely, not be reversed by this. Court.
Lastly, it is urged that the necessary parties are not before the Court: and this objection we are constrained to sustain.
It seam; that a guardian ad litem was appointed and' answered for the infant heirs of William Steele, without the service of process upon them. It has been heretofore settled by this Court, that this is irregular, and that they are not properly before the Court.,
It is also better, that Robert M. Steele should be brought before the Court, as he, as the surviving drawer-of the bills, is responsible for them, if due nptice for nonpayment was given, and may have paid.them. He may be affected by the controversy and it would he better that he be furnished with an opportunity to contest -the amount claimed.
For the want of proper parties, it is therefore decreed-, by the Court, that the decree of the Circuit Court be reversed, and the cause remanded, and time given to bring t-he necessary parties before the Court.,