ANNA J. CASSELL, Exr'x,

v.

CHARLES FITZSIMMONS, Adm'r.

</div>

1. STATEMENT.—Appellee's intestate was co-executor with appellant of his father's estate, and during his life-time, managed the estate. During this period he took of the moneys belonging to the estate a certain amount as a loan, giving his notes therefor, and in his executor's account charged himself with the same as money loaned to him. No division of such estate was made during his life-time, but the whole expenses of the family were paid out of the income of the estate. At his death the notes in question were found among his effects, indorsed, "These notes were given in settlement of account of Charles Cassell, see book, page 122," referring to his account as executor.

2. MONEY BELONGED TO ESTATE.—The moneys so used by appellee's intestate were not derived from rents of property belonging in severalty to the members of the family, but were funds of his father's estate, and the claim therefor should have been allowed against his estate as a claim in favor of his father's estate, and belonged under the sixth class designated in the statute.

APPEAL from the Circuit Court of Morgan county; the Hon. CYRUS EPLER, Judge, presiding. Opinion filed July 2, 1880.

Mr. WILLIAM BROWN and Mr. R. D. RUSSELL, for appellant; that the claim belonged to the sixth class, cited Rev. Stat. Chap. 3, § 70; Wilson v. Kirby, 88 Ill. 566.

An executor cannot use the trust fund for his own purposes: Kelar v. Bulor, 5 T. B. Mon. 573; Whitney v. Peddicord, 63 Ill. 249; Rowan v. Kirkpatrick, 14 Ill. 1.

Messrs. MORRISON, WHITLOCK & LIPPINCOTT, for appellee.

McCULLOCH, P. J. In the month of March, 1862, one Joseph J. Cassell died leaving a will, which was afterwards duly probated, in and by which he appointed his widow the appellant in this case, his executrix, and his son Charles his executor. After sundry devises and bequests of real and personal estate to his widow and children, the will contains this clause: " and I affectionately commend her " (*i. e.* appellant) " to the tender consideration of my children, trusting they will never withhold from her the duty and obedience to which she is so peculiarly entitled. It is my desire that she and they may continue to live together as a united family, striving to bless each other, and to deserve the favor of God. I earnestly recommend them to keep no separate accounts of their living together, but by willing contributions of means and efforts to accomplish the honorable end of maintaining a cheerful and comfortable home."

Soon after the testator's death, appellant and her son Charles were duly qualified as executrix and executor of the will, Charles taking upon himself the chief management of the estate, and having the custody of all the personal assets. The manner in which his accounts were kept leaves no doubt upon the mind that his intentions were to carry out in good faith his father's wishes as expressed in the clause of his will already quoted. The inventory filed in the county court showed cash on hand at the time of decease, together with good notes and accounts, amounting to nearly fifteen thousand dollars. The first report of the executors, filed March 28, 1864, shows that separate accounts 1 ad been kept of the several classes of receipts and expenditures, showing with a great deal of care and exactness the amount of moneys received on notes and accounts due the deceased, the amount received from rents, the amounts paid out for debts owing by the deceased and for money

re-loaned, the amount taken from the rent account for repairs on the real estate and the amount paid out for family expenses. This report shows good notes on hand to the amount of nearly thirteen thousand dollars.

No further report appears until September, 1869, when a similar report was made showing in detail the amount of principal and interest collected on the notes in each year, with the amounts re-loaned, the amount of rents collected each year, with the amount paid out for repairs and other incidental expenses attending the realty, and the amount paid out each year for family expenses. Accompanying this report is a list of notes belonging to the estate, amongst which are mentioned four notes of Charles Cassell for $2,058.88 each, dated April 1, 1869, payable one day after date, with interest at ten per cent. per annum. No further reports were made during the life-time of Charles Cassell. He died on the 28th of February, 1876, and appellee was duly appointed administrator of his estate. Amongst the papers of his father's estate in Charles' possession at the time of his death were found four notes corresponding in date and amount with those mentioned in the report, all bearing his signature, and payable to appellant and himself as executors of the estate of Joseph J. Cassell. These notes appellant filed as a claim against his estate, claiming it to be an indebtedness of the sixth class. In further support of this claim, appellant produced Charles' ledger, in which he had kept an itemized account between himself and his father's estate, commencing April 11, 1864, and continuing up to April 1, 1869, when the account is balanced by four notes as above described. A rest is made in this account on the first of April, 1868, at which date interest is added to the amount of the debits and credits, and after that period interest is computed on both receipts and payments at ten per cent. per annum until April 1, 1869. The notes were all written upon one piece of paper and indorsed as follows: "Interest paid on this note to April 1, 1873, and $892 on one note." The paper also bore this memorandum: "These notes were given in settlement of account of Charles Cassell. See book, page 122." The page and book so referred to are admitted to be the ledger before

mentioned. The proof is that the family lived at common charges, and the entire income of the estate was considered a fund for that purpose, the principal care of appellant being that they should live within their means and not go in debt. This was in accordance with the earnest wishes of the testator as expressed in his will, that by willing contributions and efforts, they might maintain a cheerful and comfortable home.

It is now contended that the moneys used by Charles, with the consent of appellant, in the business in which he was then engaged, were derived from rents of property, belonging in severalty to the members of the family, and were not funds properly belonging to the estate of his father; that he was responsible therefor to them individually, and not to appellant as his co-executor, and that his father's estate is not entitled to any preference in payment over other creditors.

We cannot accept this view of the case as being the correct one. The will divided the real estate, except the homestead, between the wife and children of the deceased, and also made them his residuary legatees of both personal and real estate in equal shares. The youngest child became of age in 1867, and up to the time of the death of Charles in 1876, there had been no division of the estate, but the entire income thereof, both that accruing from rents and that from interest on money loaned, seems to have been treated as a common fund for the support of the family. On the first of April, 1864, the executors reported good notes on hand, to the amount of $12,838.14. On the first day of April, 1869, they had good notes on hand, including those of Charles Cassell, to the amount of $11,526.03 The difference between the amounts on hand April 1, 1864, and April 1, 1869, is properly accounted for in the report.

During these five years the report shows collections upon the principal of notes, to the amount of $26,180.60, and cash re-loaned to the amount of $24,869.87, the difference being almost identical with the amount of the former difference. During the same period the interest collected amounted to $4,155.07, while the net proceeds of the rents, deducting expenses paid on account of the realty, amounted to $5,576.32, making the total net income $9,731.39, while the family ex-

penses amounted to $10,542.94. It therefore appears that the expenses exceeded the income by $811.55. This excess occurred during the year ending April, 1869, when the family expenses appeared to be more than double what they were in any former year, owing, no doubt, to the settlement of some large bills with the firm of which Charles was a member.

In order to make up the said sum of $24,869.87 of money re-loaned during these five years, it is necessary to take into the account that which Charles had put into his own business from time to time. Accordingly, we find in the account he kept for the first year between himself and the estate upon his own ledger, the moneys of the estate used by him are charged up as so much money borrowed, and upon the whole sum so used by him, he charges himself with interest at ten per cent. per annum up to April 1, 1869, when the notes were made.

This evidence leaves no doubt upon our minds that the notes in question represent so much of the principal money originally loaned as had been collected by him and used in his own business, and that he intended to charge himself therewith as so much money borrowed of the estate, with interest at ten per cent. per annum. Appellee's view of the case would lead us to the conclusion that he had used up the principal of the estate in the support of the family, and thereby destroyed a trust fund which the will required him to preserve intact, to the extent, at least, of the shares of his two sisters, who, by the codicil, were to receive one thousand dollars each at marriage, or upon their arrival at the age of twenty-one years, respectively, and the balance of whose shares was to remain invested by the executors, on good security, the interest to be paid them during life. Having used the trust funds in his own business, it is but equitable that Charles should have charged himself with the highest legal rate of interest at which the funds could have been loaned to other persons, which is shown to have been ten per cent. per annum.

As there never has been any settlement of the personal estate with the probate court, and no division thereof amongst those entitled thereto by the will, the surviving executrix is entitled to the funds, and entitled to collect the same from the

administrator of the estate of Charles Cassell. It was, therefore, erroneous in the circuit court to reject the claim.

We are also of the opinion that it properly comes under the sixth class, as designated by the statute, and should be so allowed. The judgment is, therefore, reversed, and the cause remanded.

<div align="right">Reversed and remanded.</div>