## Ratliff, et al. v. Anderson & Ratliff, et al.

(Decided June 13, 1922.)

### Appeal from Pike Circuit Court.

1. Homestead—Exemption Against Purchase Money Claim.—Under the terms of our statute (section 1702) there is no homestead exemption as against a claim for purchase money due, and it is not necessary that a wife should join with her husband in a mortgage given by him to secure money with which to pay off the purchase price.

2. Homestead—Improvements—Liens.—Where the purchaser partially erects improvements on the homestead before the purchase price is paid, although there is no lien retained therefor, if he then borrows additional money from the seller for the purpose of completing the improvements, and executes to him a mortgage to cover the original purchase price and the money advanced to complete improvements, the money advanced for that purpose is equivalent to purchase money, and it is not necessary for the wife to join in the mortgage

3. Payment—Application of Payor.—If a debtor owes to his creditor two or more debts it is always the right of the debtor to designate the debt to which he desires a payment to be applied; but if there be no such designation by the debtor, then it is the right of the creditor, where no equities intervene involving the rights of third parties, to apply the payment to such debt as he may select. If there has been no application by either party, it is the duty of the court to apply the payment to unsecured debts.

4. Homestead—Payment—Subjection by Creditors.—If one buys a homestead on credit and before it is paid for contracts other debts, the payments on the homestead after the other debts are contracted may be subjected by the creditors, to that extent, to the payment of such debts. But where the debts are contracted before the purchase money for the homestead is fully paid, but no

part thereof has been paid since the debts were so contracted, there is no equity entitling the holders of such debts to subject any right in the homestead.

R. H. COOPER for appellants.

J. E. CHILDERS and W. W. REYNOLDS for appellees.

OPINON OF THE COURT BY TURNER, COMMISSIONER—Reversing.

The only question in this case is whether appellants are entitled to a homestead exemption in the property ordered to be subjected in the judgment of the circuit court as against any of the appellees, there being five creditors whose claims were in their several suits, afterwards consolidated, asserted as liens thereon.

On or about the 1st of November, 1912, appellant J. C. Ratliff bought from Joel and Harriett Ratliff, and they conveyed to him, a lot in the town of Hellier, Pike county, Kentucky. The purchase price was two hundred and fifty dollars, of which only fifty dollars was paid at the time, and in the deed no lien was retained to secure the unpaid purchase money.

J. C. Ratliff shortly thereafter began the erection of a house on the lot in question and some time prior to the 12th day of February, 1913, he and his family, consisting of his wife and three children, moved into the house although it was not then completed.

On the 12th day of February, 1913, he went to Joel and Harriett Ratliff, the persons from whom he had bought the lot, and which lot was adjoining their own home, and told them he did not have the money to complete the house which he was erecting on the lot and would have to sell the same; whereupon Joel and Harriett Ratliff agreed to and did advance to him two hundred dollars to enable him to complete the house, and simultaneously therewith took from J. C. Ratliff a mortgage on the lot not only to secure the two hundred dollars then advanced but also to secure the two hundred dollars unpaid purchase money for which no lien had been retained, but in this mortgage Martha Ratliff, the wife of J. C. Ratliff, did not join.

J. C. Ratliff and his family continued to occupy the place as their homestead after having completed the house with the two hundred dollars so advanced.

On the 8th of November, 1918, J. C. Ratliff and his wife executed to Anderson & Ratliff, a firm, a mortgage for two hundred dollars on the property for money advanced to J. C. Ratliff.

In December, 1918, J. C. and Martha Ratliff mortgaged the property to N. Z. Bartley and others to secure the payment of a three hundred and fifty dollar note upon which Bartley and others had become either the sureties or endorsers of J. C. Ratliff, and which note was discounted at the First National Bank of Pikeville.

In 1917, J. C. Ratliff became indebted to the Paintsville Grocery Company in the sum of four or five hundred dollars, and that company, in 1918, secured a judgment against Ratliff for that amount and thereafter, and at some time not stated in the pleading of the Paintsville Grocery Company, it caused an execution to be levied on the property in question, and, as seems to be conceded in the briefs, a sale was had under that execution and the Paintsville Grocery Company became the purchaser or bidder at such sale, whereby it acquired a lien thereon which it is also sought to enforce in these consolidated actions. No pleading in the record discloses the exact amount of that debt or judgment and there is nothing to show when the execution was levied on the property, or when the sale was had or what occurred. There is neither allegation nor exhibit to show when these vitally important things took place, and yet it is apparent from the record that there were questions of priority between the Paintsville Grocery Company and some of the other parties to the consolidated actions, which questions of priority, however, are not involved on this appeal.

On June 6, 1919, J. C. Ratliff executed his note to Coleman and others, payable at the First National Bank of Pikeville, for three hundred and fifty dollars, and the payees therein discounted the same at that bank, and in March, 1920, it in an equitable action, in which Coleman and others joined, secured an attachment against J. C. Ratliff and had same levied upon the property in question.

Appellants asserted their homestead exemption as against all of these debts, and the court upon a submission of the consolidated actions adjudged they were not entitled to such exemption as against any of the claims, and after adjudging priorities between the several parties, directed a sale of the property for the payment of each of these debts.

The first question made by appellants is that as the wife did not join in the mortgage of February 12, 1913, she has not waived her right of homestead and is entitled thereto as against that mortgage. Waiving, for the purposes, of this case, the question whether a wife may assert for her own benefit a homestead exemption in the property of her husband, who is living and who has not deserted her, when the husband cannot assert such exemption, there is another and conclusive reason why she was properly denied the homestead exemption as against this mortgage.

The mortgage was given to secure two hundred dollars of the original purchase money and in addittion to secure a loan for two hundred dollars to enable the original purchaser, who had not paid the purchase price, to complete improvements already begun upon the property. In other words, the mortgage of February 12, 1913, was but a continuation of and a completion of the original purchase evidenced by the conveyance of November, 1912, wherein presumably the parties by oversight had failed to retain a lien. · Then, in February, 1913, appellant was threatened with the necessity of disposing of his homestead, possibly at a sacrifice, because he did not have the money with which to complete improvements already partially erected thereon, and in this situation he not only gave a mortgage for the original unpaid purchase money, but he also embraced in that mortgage two hundred dollars simultaneously advanced for the purpose of enabling him to complete the improvements already begun. Under such circumstances the mortgage was to all intents and purposes a mortgage for the purchase money and the two hundred dollars then advanced was equivalent to, under the conditions, an additional purchase price then agreed upon by the parties and the whole sum must be treated as the purchase price of the property.

Under the express terms of the statute (section 1702) there is no homestead exemption as against a claim for purchase money due therefor, and it is not necessary that a wife shall join with her husband in a mortgage given by him to secure money with which to pay off the purchase price for the homestead. Riley v. Filmore, 4 K. L. R. 347; Harrod v. Johnson, 5 K. L. R. 247.

There is also a claim of appellants that certain payments were made on this four hundred dollar mortgage to Joel Ratliff for which they are entitled to credit. There is, however, on this issue, a contrariety of evidence; J. C.

Ratliff claiming that he made payments to the extent of two hundred and forty dollars which he directed to be credited on this mortgage debt, while Joel Ratliff testifies that the payments made to him by J. C. Ratliff were not directed by him to be paid on any particular debt, and that he credited such payments on other and different debts owing to him by J. C. Ratliff which were not secured by mortgage, and that none of such payments were directed by J. C. Ratliff to be credited on the mortgage debt.

When a debtor owes to his creditor two or more debts it is always the right of the debtor to designate the debt to which he desires a payment to be applied; but if there be no such designation by the debtor, then it is the right of the creditor, where no equities intervene involving the rights of third parties, to apply the payment to such debt as he, the creditor, may select. In this case it is apparent the lower court took the view from the evidence that appellant had not specified the payments should be applied to the mortgage debt and that being true held that the creditor, Joel Ratliff, had a right to apply them on his unsecured debts against J. C. Ratliff. But if the court had been of opinion under the evidence that there had been no application by either party of the credits, then the result would be the same; for it would be the duty of the court to apply them to the unsecured debts which Joel Ratliff had against J. C. Ratliff. McDaniel v. Barnes, etc., 5 Bush 183; Helm v. Commonwealth, 79 Ky. 70; Andrews v. Ky. Building & Loan Assn.'s Ass'ee, 24 R. 967.

There is also a claim by the female appellant that she was coerced into signing the two mortgages to Anderson & Ratliff and to Bartley and others; but we concur with the finding of fact by the chancellor below that there was no such coercion as will authorize the cancellation of those mortgages insofar as they affected the female appellant, and it seems clear that the court did not err in adjudging that appellants had no homestead exemption in the property involved as against the three mortgages.

The remaining question is whether appellants are entitled to the homestead exemption in the property as against the debts of the Paintsville Grocery Company and the unsecured debt of the First National Bank of Pikeville.

The debt of the Paintsville Grocery Company was created in 1917 and the debt of the First National Bank

of Pikeville in June, 1919, and the record fails to show appellants at any time after either of those dates made any payment whatsoever on the homestead or erected any improvements thereon.

It is the claim of these two appellees that as under the interpretation of the homestead statute, frequently made by this court, a homestead is not purchased until it is paid for, the debtor is not entitled to the exemption because the homestead has never yet been paid for. But an analysis of this court's opinions on that subject will disclose that they hold only that where one buys a homestead on credit and before it is paid for contracts other debts, the payments on the homestead after the other debts are contracted may be subjected, to that extent, to the payment of the debts contracted before the payments on the homestead. The theory upon which that is held is that the creditors whose debts are contracted before the homestead is acquired are in equity and good conscience entitled to have the funds thus paid on the homestead applied to their debts.

In this case appellants had acquired the right of homestead long before the creation of either of the debts in question and while they still owe something on the homestead, which is a lien thereon, no payment whatever of any kind or character has been made upon the homestead since the creation of either of the two debts in question, and therefore these two appellees have shown themselves entitled to no equity in the property, for no money has been put into it since the creation of their debts to which, in good conscience, they had any right whatsoever.

The case of Mosley v. Bevins, 91 Ky. 260, is the leading case in this state on the subject, and in that case the court very plainly makes the distinction which we have tried to point out, viz., that the equity of the creditor arises out of the payment by the debtor on the homestead or the erection of improvements thereon after the creation of the creditor's debt. The court in that case, in discussing the effect of the amendment of March 1, 1876, to our homestead exemption statute, which amendment is the same as the concluding clause in section 1702 of the Kentucky Statutes, says:

"The underlying principle of that amendment is, that the homestead of a debtor shall not be exempt from payment of any just debt or liability, except when he has paid, or to the extent he has paid therefor, prior to creation of such debt or liability. For there is no difference

in principle or effect between purchasing and paying for a homestead with means that ought to have been applied to payment of a pre-existing debt, and paying wholly or partially after creation of a debt the purchase price of a homestead, even if it was bargained for prior to existence of the debt. In one case, as well as in the other, the means used by the debtor to pay for the homestead may have either been obtained directly from, or else looked to and relied on by, the creditor when the debt was created; and in both alike it would be unjust to the creditor to give legal immunity for such unfair or treacherous conduct of the debtor; nor is there any reason for subjecting a homestead to the extent of improvements erected thereon after creation of a debt to its payment, as is expressly provided by section 16, that does not equally apply for making it liable to extent of purchase money paid after a debt is created; for, if in the latter case the debtor might be hindered or delayed in acquiring absolute ownership, he would, in the other, be prevented having full enjoyment of the land as a homestead. In our opinion, according to proper construction of the statute as amended, he is entitled to neither, unless procured honestly and without prejudice to the rights of existing creditors.''

Thereafter, in the case of Darnell v. Smith, 98 Ky. 238, the opinion in the case of Mosley v. Bevins just quoted was under discussion in another homestead exemption case, and the court, in explanation of what it conceived the former opinion to mean, said:

''For plaintiffs the case of Mosley v. Bevins, 91 Ky. 260, is relied upon, in which the court held that a homestead purchased, but not paid for, could not be held against debts created after the purchase, but before the payment of the purchase money. In that case, however, there was no other equity presented in behalf of the claimant of the homestead. No question of the value of improvements placed upon the lot before the creation of the debt was made in that suit.

The court having before it only the question of payment of part of the purchase money after the creation of the debt, spoke very properly only of that matter. And yet it is manifest that, from the whole tenor and spirit of that decision, the court would have protected any beneficial interest of the claimant of the homestead, whether by the payment of part purchase money or by

placing valuable improvements on same before the creation of the debt.''

In the case of Andrews v. Building & Loan Association, 23 K. L. R. 2418, the opinion in Moseley v. Bevins is again construed to mean that where a part of the purchase money of a homestead was paid prior to the creation of a debt and the remainder of the purchase price paid subsequent to the creation thereof, the homestead might be subjected to the extent of the purchase money paid after the creation of the debt.

In this case there has been no payment on the homestead since the creation of the two debts in question nor have any improvements been erected, and it follows there is no fund which has gone into this homestead which they, or either of them, in equity may subject.

It is our opinion that appellants are entitled to their homestead exemption as against each of these two debts, and for that reason the judgment is reversed with directions to enter a judgment enforcing the three mortgage liens, and if the property is indivisible, to adjudge to appellants a homestead right to the extent of one thousand dollars out of the excess, if any, after the payment of the three mortgage debts.

Whole court sitting.