## Anspacher v. Utterback's Administrator et al.

(Decided Feb. 6, 1934.)

668

NUNN & WALLER for appellant.

CHAS. C. GRASSHAM, L. B. ALEXANDER, A. E. BOYD and W. F. McMURRY, Jr., for appellees.

OPINION OF THE COURT BY JUDGE RICHARDSON—Reversing.

The decisive question in this case is the right of devisees, one of whom is also an executrix of a will, to a preference as to the other creditors of a deceased co-executor, under section 3868, Kentucky Statutes. J. C. Utterback, a resident of McCracken county, Ky., died intestate, owing debts aggregating $500,000, with an estate of the value from $25,000 to $30,000 available for the payment of his debts. Only the claim of Anspacher's estate grows out of a fiduciary relation. The widow of A. E. Anspacher, for his estate, asserts the right of the devisees under the will of her husband, to a preference under section 3868. He devised all of his property, real, personal, and mixed, of which he died possessed, to her for life, "with power to sell, convey, deed or conduct business with the estate, the same as her husband could do while he was living." And "at the death of my wife, what may be remaining in her hands be equally divided among my brothers and sisters; at their death their portion to go to their children." The effect of this language is to give a life estate to his wife and a gift over of the remainder to the testator's brothers and sisters and their children. Therefore we shall consider this case, not regarding the widow as the only devisee

under the will. Wintuska v. Peart, 237 Ky. 666, 36 S. W. (2d) 50; Banzhoff v. Smith, 233 Ky. 737, 26 S. W. (2d) 1034; Blessing v. Johnston, 249 Ky. 777, 61 S. W. (2d) 635. Mrs. Anspacher and J. C. Utterback were nominated in the will as executors without bond, with direction that no appraisement or inventory be made of the estate. Utterback took possession of the entire estate and managed it as sole executor. He made no settlement with her or the county court. She was 65 years of age at the death of her husband; at this time she is 81. From time to time Utterback made payments to her, sufficient only to satisfy her frugal, simple needs. From March 11, 1916, to October 30, 1930, he prepared and signed reports showing his receipts and disbursements. He charged himself in no one of them with the corpus of the estate. At his death some of them were on file in the county clerk's office; others lodged in a remote section of the bank of which he was an officer; still others were found among the papers of Mrs. Anspacher. The estate in his hands was in a confused and uncertain condition. In an action to settle the estate of Utterback, the cause was referred to the master commissioner to audit the estate of Anspacher in the hands of Utterback as executor. The trial court, on fiscal hearing, fixed the value of the estate in his hands, as executor, at $33,314.08, the balance due on October 15, 1932. From this aggregate he deducted $5,600, the inventory value of 18 shares of City National Bank stock and 10 shares of City Savings Bank stock, leaving the balance due Anspacher's estate $27,714.08. In their briefs, Anspacher's estate and the administrator of the estate of Utterback agree that the finding of the trial court fixing the balance of Anspacher's estate at $27,714.08 is the correct balance in Utterback's hands at the time of the latter's death. In the brief of the administrator of Utterback it is written:

> "The only error in my opinion made by the trial court in this judgment was the refusal of the court to allow any commission to J. C. Utterback on the amounts that had passed through his hands as executor. This question of commission is not of such importance as to warrant a reversal of the judgment, in my opinion."

Certain of the creditors of Utterback dispute the correctness of the finding of the chancellor. Among other items, these creditors argue "there were three thousand

dollars [$3,000.00] in the savings account in the Citizens' National Bank, which had been placed there by Utterback at the time the Citizens' National Bank closed, for which Utterback was given no credit." It is our view the finding of the chancellor is supported by the facts. We shall dispose of the questions presented, considering the total amount of the estate in the hands of Utterback at the time of his death, as follows:

Receipts:

| | | |
|---|---:|---:|
| Personal Property Inventory | $21,514.24 | |
| Personal Property Income | 17,897.87 | |
| | | $39,412.11 |
| Real Estate Sales | 15,312.50 | |
| Real Estate Rents | 5,342.50 | |
| | | 20,654.98 |
| Total Receipts | | $60,067.09 |

Disbursements:

| | | |
|---|---:|---:|
| Taxes, Repairs & Insurance | $ 4,732.68 | |
| Direct to Mrs. Anspacher | 18,386.03 | |
| To Miss Tillie, Temple Israel, debts, & funeral | 5,728.16 | |
| Error | .50 | |
| Total Disbursements | | $28,847.37 |
| Balance in hand 10-15-30 | | 31,219.72 |
| Add interest to 10-15-32 | | 3,746.36 |
| | | $34,966.08 |
| Deduct admitted payments made after 10-15-30 | | 1,652.00 |
| Court deducted inventory value of Bank Stocks | | 5,600.00 |
| Amount adjudged without preference | | $27,714.08 |

The right of the estate of Anspacher to preference under section 3868, Kentucky Statutes, is the decisive question to be determined. Incidentally the law of application of payments is involved, together with the doctrine of estoppel and laches and the liability of co-executors.

It is not denied that Utterback as executor assumed and exercised complete and exclusive authority over the entire estate of the testator from the time of his qualification until his death. It is neither denied nor disputed that he filed no appraisement or inventory of the estate with the county court and made no report of the

corpus of the estate in any statement to, or settlement with, the county court or Mrs. Anspacher. It is not claimed Mrs. Anspacher, although she jointly qualified as executrix of the will of her husband, ever assumed or exercised any authority over, or control of, or right to, the estate of the testator, either as executrix or as an individual, except she received the several payments as they were made to her by Utterback. She trusted implicitly and relied exclusively upon Utterback in the control and management of the estate. His reports of the receipts and disbursements filed in the county court, copies of some of which were delivered to Mrs. Anspacher, are correct as far as they go. As executrix she asserts the right of Anspacher's estate under section 3868, Kentucky Statutes. It expressly provides:

"If the personal estate of a decedent be not sufficient to pay his liabilities, * * * the amount of the estate of a dead person * * * committed by a court of record to, and remaining in the hands of, a decedent, shall be paid in full before any pro rata distribution shall be made. * * * All other debts and liabilities shall be of equal dignity, and paid ratable in the administration of his estate.'

Unquestonably this section accords to Anspacher's estate a preference as to the personal estate of the testator "committed by the court" to, and remaining in, the hands of Utterback at the time of his death, unless there exists a statute to the contrary or a preference is forbidden by the established principles of equity. No provision is contained in any other section of the statute concerning the right of preference. It is, however, most earnestly and vigorously urged that the principles of equity preclude the estate's right of preference; also the fact she was coexecutor precludes the estate's right to the statutory preference. It is conceded Mrs. Anspacher placed in Utterback's hands the proceeds of certain real estate and that she is not entitled to preference as to same.

It is strenuously argued that Mrs. Anspacher "as co-executor suffered and allowed her co-executor to receive these assets [the personal estate] and exercised no care or caution to prevent any waste. * * *" She allowed Utterback to retain this money in his own hands, and his statements lodged with the county clerk's office "show he had the money and had executed notes to her

for a part of the money, accounted to her for the interest on the money, which he had loaned himself." The situation presented by the record "was brought about by reason of her acts and confidence 'which she had in her co-executor"; therefore "she is not allowed a preference against his estate." To support this argument, sections 1180, 1278, and 1284, Story's Equity Jurisprudence, are cited, which read:

> Section 1180. "If one executor knows that the assets received by the other executor are not applied according to the direction of the will, or in due course of administration, and he stands by and acquiesces in or suffers the assets to be wasted by such executor, without any effort to require or compel the execution of the trust, or the application of the assets in the course of administration thereof, he will be held liable for the waste or misapplication of said assets."

> Section 1278. "Whenever a trustee or executor, by his own negligence or laches, suffers his co-executor or co-trustee to receive and waste the trust funds or assets of the testator, when he has the means to prevent such waste by the exercise of reasonable care and diligence, then in such case such trustee or executor will be held personally responsible for the loss occasioned by such receipt and waste by his co-trustee or co-executor."

> Section 1284. "So, if one trustee shall wrongfully suffer the other to retain the trust money a long time in his own hands without securing; or should lend it to the other on his simple note, or should join the other in lending it to a tradesman upon insufficient surety, in all such cases he will be deemed liable for any loss."

Walker et al. v. Walker's Ex'rs et al., 88 Ky. 625, 11 S. W. 718, 11 Ky. Law Rep. 80; and Grundy et al. v. Drye et al., 104 Ky. 825, 48 S. W. 155, 49 S. W. 469, 20 Ky. Law Rep. 970, 1337, are cited to sustain the statement of Mr. Story. For the estate of Anspacher it is argued that the doctrine of estoppel and laches are not applicable under the facts in the present case.

The circuit court, guided by the principles here stressed by the estate of Utterback and his creditors, denied the estate of Anspacher the right of preference

under section 3868. The language of section 3868 is clear, unambiguous, and undoubtful in its intendment and meaning, and plainly authorizes a preference, unless the fact that she was coexecutor or has been guilty of negligence deprives the devisees, including Mrs. Anspacher, of the right to assert and enforce preference thereunder to the extent of the amount of the personal estate of the testator in the hands of Utterback at the time of his death. The statutes of limitation have not been pleaded.

The provisions of the will of the testator connote his intention to provide for his wife. She ranked first in his mind at the time of its writing. It evidences his purpose in the nomination of Utterback as one of the executors of his will to relieve his wife of the burden of the active administration of the estate. It liberalizes the duties of the executors by the provision directing that they qualify without bond and make no appraisement, inventory, reports to, or settlements with, the county court. It designates no period of time for the completion of its execution. The purpose in this respect of the testator is disclosed by the will. Utterback's continued possession of the estate was by virtue of the liberal provisions of the will, intended for the benefit of the aged widow of the testator during her life. Her act of permitting him continuously and exclusively to assume and exercise control of the estate, as if he was sole executor, was in a sense carrying out the will of the testator. To interpret the will otherwise or to construe the acts of Mrs. Anspacher as the basis of an estoppel or as constituting laches is equivalent to disregarding the intention of the testator.

Moreover, "an estoppel proceeds from some act of the person which makes it inequitable for him to assert a claim of ownership as against another, even if there is no intention to surrender a claim or give up the ownership." Justice v. Burgess, 244 Ky. 774, 52 S. W. (2d) 720, 723. Laches is said to be unreasonable delay to do that which a man by law is obliged, or duty bound, to do (Medley v. Johnson, Trustee, et al., 200 Ky. 689, 255 S. W. 532); or it is negligence by which another has been led into changing his condition as to the property or right in question, making it inequitable to allow the negligent party to be preferred in his legal right to the one whom his negligence has misled (Hughes

et al. v. Wallace [Ky.] 118 S. W. 324). It is an equitable doctrine, the elements of which are short of estoppel, and the time in which it may ripen is short of the applicable period of limitation, while limitation is a mere matter of time. Klineline, Sr., v. Head, 205 Ky. 644, 266 S. W. 370. Estoppel like laches is always a question of fact to be determined by the circumstances of each case. Glock's Adm'r v. Weikel et al., 149 Ky. 170, 147 S. W. 897.

To estop the estate or Mrs. Anspacher on the theory that credit had been extended Utterback by his general creditors in ignorance of the estate in his hands and due the estate or her would be a plain and flagrant discrimination founded upon nothing except a reliance upon the authority conferred upon him by the will of the testator. The estate of Anspacher in the hands of Utterback as executor was not a secret debt. As to it, persons dealing with the executor as an individual and extending credit to him were under a duty to secure or protect their own debts, and they assumed the risk usually attending dealings with other persons on mere personal credit. In all such cases individual creditors must be aware of the danger of not securing their own loans and know the law has made no provision for their protection in case of the death of their debtors. They may under some circumstances avail themselves of the doctrine of estoppel when they have extended credit, relying upon debtor's known possession of property as evidence of title, but almost daily experience tells them it is unsafe to deal with a man on the assumption that he owes no debts. There is no legal presumption that he owes none. No law requires him or his creditors to record them. The facts adduced fall far short of establishing either estoppel or laches sufficient to defeat the right of preference here asserted by Anspacher's estate.

In Story's Equity Jurisprudence, sec. 1258, it is written:

"The general proposition which is maintained both at law and in equity upon this subject is that, if any property in its original state and form is covered with a trust in favor of the principal, no change of that state and form can divest it of such trust, or give the agent or trustee converting it, or those who represent him any right—not being bona fide pur-

chasers for a valuable consideration without notice —any more valid claim in respect to it than they respectively had had before such change. An abuse of a trust can confer no rights on the party abusing it, or on those who claim in privity with him.''

Allen v. Russell, 78 Ky. 105; Farmers' Bank of White Plains v. Bailey, 221 Ky. 55, 297 S. W. 938.

In Hill v. Fleming, 128 Ky. 201, 107 S. W. 764, 766, 32 Ky. Law Rep. 1065, 16 Ann. Cas. 840, it is written:

''The law is now well settled that as between the cestui que trust and trustee, and all parties claiming under the trustee otherwise than by purchase for a valuable consideration without notice, all property belonging to a trust, however much it may be changed or altered in its nature or character, and all the fruit of such property, whether in its original or altered state, continues to be subject to or affected by the trust.''

It was said in Hubbard v. Alamo Irrigating & Mfg. Co., 53 Kan. 637, 36 P. 1053, 1056, 37 P. 625:

''It certainly would not be claimed that, if the identical money received by Lord as the proceeds of the bonds came in one package into the hands of the administrator, he could use it as a part of Lord's estate. It would be the money of the plaintiff alone, in which the administrator would have no interest whatever. Let us go a step further, and assume that it had been mingled with other money of the deceased, but was still all retained; can there be a doubt that the plaintiff would have a right to have it counted out and separated from the whole sum? or had it been invested in some specific property, to which it could clearly be traced, would a court of equity hesitate to declare the real ownership in the plaintiff, notwithstanding the death of Lord? The theory on which courts proceed in all such cases is, and must be, that no title to the trust fund ever passed to the trustee, and that, however it has been mixed and mingled with his other property, the title still remains in the cestui que trust. In reason, there can be no sound distinction between the case of an administrator and that of an assignee, and the principle on which the courts hold that the assignee must pay over the trust fund in advance of

payment to the general creditors is that the owner of the fund has a title which the trustee cannot destroy or divest by any act of his own, without the consent or knowledge of the beneficiary.''

To the same effect, see Smith v. Combs, 49 N. J. Eq. 420, 24 A. 9; In re Estate of Wm. J. Van Duzer, 51 How. Prac. (N. Y.) 410; Chas. Fitzsimmons v. Anna J. Cassell, 98 Ill. 332; Cassell v. Fitzsimmons, 6 Ill. App. 525; Moses v. Murgatroyd, 1 Johns. Ch. (N. Y.) 119, 7 Am. Dec. 478; Morris v. Westerman, 79 W. Va. 502, 97 S. E. 567, 3 A. L. R. 1237. In the Estate of Wm. J. Van Duzer, supra, the principle is stated that, where an executor wrongfully commingles trust funds, arising from trust property sold by the testator, with other funds of the estate, such wrongful act of the executor cannot prevent the payment to the cestui que trust of the amount of the trust fund in preference to an ordinary debt of the estate. In Cassell v. Fitzsimmons and Fitzsimmons v. Cassell, the principle is stated:

"If one of two executors of the estate receive moneys due the estate while acting in that capacity, which have not been accounted for, either by him in his life time, or by his legal representative after his death, the surviving executor will have the right to have the amount so received by his co-executor, allowed against the estate," under a statute according the right of preference.

If Mrs. Anspacher was a stranger to Anspacher's estate and had foreborne requiring a settlement by Utterback and not enforced payment, the result would be the same, in so far as his general creditors are concerned. The personal property received by Utterback, as executor, still belongs to the estate of the testator. Neither his estate nor his creditors may defeat the right of Anspacher's esate thereto by the process of preference given it· by the statute, on the ground Utterback commingled the estate with his funds and that his coexecutrix negligently or otherwise permitted him to do so.

The principle, if an executor wrongfully suffers a coexecutor to retain, use, invest or commingle the devised estate in the latter's hands with his own funds, and a loss results to the devisees, both are liable therefor to them, is not controversial. But the right of pref-

erence afforded by the statute did not originate nor exist thereunder until the death of the improvident or defaulting executor. The indefeasible right of preference in such case is unaffected by the action, conduct, or laches of the surviving executor, occurring during the life of the deceased executor who was jointly liable with the survivor for the estate in the hands of the deceased coexecutor. The right of Anspacher's estate to preference against the other creditors of Utterback accrued on the death of Utterback, and, nothing having occurred since his death affecting this right, Anspacher's estate is entitled to avail itself of the right of preference and to have the personal estate in his hands at the time of his death accounted for to the estate of Anspacher before the payment of his general creditors.

The claim of the Anspacher's estate was derived from the personal property committed by the order of the court under the will of Anspacher to the controlling possession of Utterback as executor, $15,312.50 from the proceeds of the widow's sales of the real estate, and $5,342.48, rents of the real estate, which she intrusted to him as her agent.

The trial court found that Utterback had expended $4,732.68 for taxes, repairs, and insurance, "to Miss Tillie, Temple Israel, debts and funeral expenses, $5,728.16," and had paid directly to Mrs. Anspacher $18,386.03. It is not disputed that the payment to Miss Tillie was out of the personal estate of the testator, nor is it denied the taxes, repairs, and insurance were chargeable to the real estate. The controverted amount is the $18,386.03. The Anspacher estate asserts that, under the doctrine of "applied payments," the $18,386.03 having been paid to her without directions, it should be applied to the satisfaction of the proceeds of the real estate in his hands as agent of Mrs. Anspacher and not to the satisfaction of Anspacher's estate in his hands as executor. The administrator of Utterback and his other creditors insist that, since neither Utterback nor Mrs. Anspacher, during his life, indicated their election to which fund the payments to her should be applied, the same should be regarded as paid to the Anspacher estate out of the funds in his hands as executor. Utterback, when paying this amount, or any part of it, to Mrs. Anspacher, had the right to direct its application. Nutall's Adm'r v. Brannin's Ex'rs, 5 Bush,

11; McDaniel v. Barnes, 5 Bush, 183; Foote v. Miller's Adm'r, 15 Ky. Law Rep. 302; Howard v. London Mfg. Co., 72 S. W. 771, 24 Ky. Law Rep. 1934; Ratliff v. Anderson & Ratliff, 195 Ky. 320, 242 S. W. 35; Henderson v. Phœnix Ins. Co., 233 Ky. 217, 25 S. W. (2d) 359. Without his directions to her to appropriate the sum paid to the particular debt, Mrs. Anspacher had the right to apply it to the payment of whichever of the two debts she desired. Hillyer v. Vaughan, 1 J. J. Marsh. 538; Steele v. Taylor, 4 Dana, 445; Ratliff v. Anderson & Ratliff, supra; and Henderson v. Phœnix Ins. Co., supra. However, the latter rule is subject to the exception that, if only one of the debts was due at the time of the payment of the $18,386.03, or any part thereof, it was the duty of Mrs. Anspacher to apply its payment to the due debt. Bacon v. Brown, 1 Bibb, 334, 4 Am. Dec. 640.

It is the generally accepted rule that, where neither the debtor nor the creditor has applied the payment to either one of two debts, owing by the first to the latter, and it becomes necessary for a court of justice to direct on what debt the payment shall be applied (Blanton v. Rice, 5 T. B. Mon. 253), the court will make the application to the payment of the most precarious or the oldest, if both debts be due. See cases supra. As a criterion when applying the doctrine of "applied payments," the court should exercise a sound discretion, according to its notions of justice on equitable principles, so as to effectuate justice, according to the intrinsic equity of the case. 21 Ruling Case Law, sec. 104, p. 97; Blanton v. Rice, supra; McWhorter v. Bluthenthal, 136 Ala. 568, 33 So. 552, 96 Am. St. Rep. 43; Wait v. Homestead Bldg. Ass'n, 81 W. Va. 702, 95 S. E. 203, 21 A. L. R. 696.

Utterback as executor was without legal right to appropriate the estate of Anspacher to the payment of insurance and repairs on the real estate, and, in the absence of evidence, it will not be presumed that he deliberately violated his duties as executor and misapplied the funds in his hands to the payment of insurance and repairs of the real estate (Head et al. v. Oldham Bank, etc., 249 Ky. 621, 60 S. W. (2d) 621), especially since at the time of the expenditures he had in his hands, as agent of Mrs. Anspacher, funds belonging to her with which to satisfy same. The proceeds of

the real estate with which he was intrusted by Mrs. Anspacher could have been paid by Utterback at any time he chose to pay them to her, or were due upon her demand. The devisees under the will of Anspacher only had a right of action to compel him to make a settlement, showing what was due, and limitation would commence to run from the date of the settlement. Loyd v. Loyd, 46 S. W. 485, 20 Ky. Law Rep. 347; United States Fid. & Guaranty Co. v. Shields, 157 Ky. 371, 163 S. W. 203; Adams v. McAllister, 2 Ky. Law Rep. 323. The personal estate in his hands belonging to Anspacher's estate was an unliquidated demand until a settlement was made in accordance with the law, and thereby the sum due the estate determined. See 2 Bouv. Law Dict. (Rawles 3d Ed.) 2026; Williamson v. City of Eastland (Tex. Civ. App.), 65 S. W. (2d) 774. As a matter of law, it was not due the devisee until it had been so determined. The facts bring the case within the rule, where two debts are owing by the same debtor and a payment is made by him without direction, the creditor is entitled to have applied, and the court should apply, the payment to the due debt. Intrinsic justice and equity entitled Anspacher's estate to have the payments applied to the satisfaction of the proceeds of the real estate as against the other creditors of Utterback.

Utterback owed Mr. Anspacher two notes for $1,000 each and another note of $500. They have never been paid. It is argued that the estate should be compelled to accept them as cash and charged with the amount of the notes. The notes must in law be considered as having been paid by the executor and their proceeds regarded as cash in his hands as if they had actually been paid in cash. Webster v. Webster, 7 Ky. Law Rep. 302; Speed's Ex'rs v. Nelson's Ex'r, 8 B. Mon. 499; Hickman v. Kamp's Adm'r, 3 Bush, 205; Swart v. Reveal, 29 S. W. 24, 16 Ky. Law Rep. 503.

His estate should account for the notes as having been paid to the estate, without a right to rely on the presumption they were unpaid at his death. The fact they were in his possession at the time of his death is insufficient to show they were unpaid, in the absence of evidence or circumstances overcoming such reasonable presumption of payment.

The administrator of Utterback insists that his decedent is entitled to charge Anspacher's estate with

commission, under section 3883, Ky. Stats. The acts of Utterback as executor fall within the rule:

"Where an executor never performs his duty as such, never accounted, and the condition of his accounts could not be ascertained, he is not entitled to compensation."

Foster v. Foster, 71 S. W. 524, 24 Ky. Law Rep. 1396. His delay and laches in administering and distributing the estate forfeit his right to a commission. Armstrong v. McFarland's Adm'r, 187 Ky. 185, 218 S. W. 1012.

It is our conviction that the payments of Utterback to Mrs. Anspacher must be regarded as having been made by him as her agent out of the proceeds of the real estate, and that his estate is liable to that of Anspacher's for the personal estate remaining in his hands at his death, and its claim therefor is entitled to preference in payment under section 3868, and the circuit court erred in decreeing the contrary.

The judgment is reversed for proceedings consistent with this opinion.