### In re PHŒNIX HOTEL CO. OF LEX-INGTON, KY.
### No. 907.

District Court, E. D. Kentucky, at Lexington.
Aug. 11, 1937.

Stoll, Muir, Townsend & Park and S. S. Yantis, all of Lexington, Ky., for Roy Carruthers, trustee.

Hunt & Bush and Rufus Lisle, all of Lexington, Ky., for Security Trust Co., trustee for bondholders.

Allen, Duncan & Duncan, of Lexington, Ky., for Union Bank & Trust Co., executor of Miss Elizabeth Stanhope, deceased.

Frank Ginocchio, of Lexington, Ky., for Auval Baker and R. L. Baker's executor.

FORD, District Judge.

This case is submitted upon petitions to review orders of the referee (1) in respect to the allowance made to the trustee, Roy Carruthers, and his attorneys, Stoll, Muir, Townsend and Park and S. S. Yantis; (2) in respect to the action of the referee in allowing a set-off against a general claim due R. L. Baker's estate; and (3) in respect to the referee's refusal to make any allowance to the executor of R. L. Baker, the executor of Elizabeth Stanhope and Auval Baker, creditors of the estate, for attorneys' fees and expenses incurred in the institution and prosecution of litigation alleged to have resulted in recovery of property for the

benefit of the estate which had been unlawfully transferred by the bankrupt.

After a careful review of the record, upon which the referee based the allowance made to the trustee and his attorneys, consideration of the nature and extent of the services rendered, and the results accomplished, I am of the opinion that the allowances made by the referee are adequate. The relief sought by the petition to review, filed by the trustee and his attorneys, must be denied, and the orders of the referee in respect to these allowances are approved and confirmed.

The petition filed by the executor of R. L. Baker seeks review of the order of the referee in allowing a set-off of $702 in favor of the bankrupt estate against an unsecured note for $50,000 which was held against the bankrupt by Baker's executor.

It appears from the record, without dispute, that in 1934 R. L. Baker became indebted to the bankrupt, on open account, for services rendered, in the sum of $702. At that time, Mr. Baker held a note for $50,000 against the bankrupt which was unsecured and which, with accrued interest, was allowed as a general claim.

Mr. Baker was also the owner of certain second mortgage bonds amounting to more than $50,000, which were issued to him by the bankrupt corporation in exchange for its preferred stock. Due to the circumstances under which these bonds were issued to stockholders, they were adjudged inferior to the claims of general creditors. The assets of the estate were insufficient to pay anything whatever upon these second mortgage bonds, but were sufficient to pay the prior claims of general creditors, including the $50,000 note of Mr. Baker, against which the offset was allowed.

Section 68a of the Bankruptcy Act (11 U.S.C.A. § 108(a) provides: "In all cases of mutual debts or mutual credits between the estate of a bankrupt and a creditor the account shall be stated and one debt shall be set off against the other, and the balance only shall be allowed or paid." The referee acted under the authority of this provision of the Bankruptcy Act.

It is the contention of the executor of R. L. Baker that, under the general rule in Kentucky providing that, "where neither the debtor nor the creditor has applied the payment to either one of two debts, owing by the first to the latter, and it becomes necessary for a court of justice to direct on what debt the payment shall be applied, * * * the court will make the application to the payment of the most precarious or the oldest, if both debts be due," it was the duty of the referee to apply the offset to the debt due on account of Mr. Baker's second mortgage bonds, that debt being the most precarious and the oldest of the two debts.

■ While conceding the general doctrine of "applied payments" under the law of Kentucky to be as above stated, its application is limited to those cases in which it will serve the ends of justice on equitable principles. In Anspacher v. Utterback's Adm'r, 252 Ky. 666, 678, 68 S.W.(2d) 15, 20, after quoting the general rule, the court said: "As a criterion when applying the doctrine of 'applied payments,' the court should exercise a sound discretion, according to its notions of justice on equitable principles, so as to effectuate justice, according to the intrinsic equity of the case."

■ The account of $702, which Baker owed the bankrupt estate for services rendered to him by the bankrupt, constituted a part of the assets applicable first to the payment of general creditors and costs of administration. No assets were available for payment of second mortgage debts. To apply the account as an offset against the second mortgage bonds would be, to that extent, an appropriation of property belonging to prior creditors to the exclusive benefit of a debt inferior in rank, upon which nothing is payable by the trustee. It would be, in effect, an inequitable and preferential distribution of assets rather than a set-off.

■ Moreover, it is the rule that, in order that debts may be set off under section 68 of the Bankruptcy Act (11 U.S.C.A. § 108), they must be "mutual and in the same right." The nature of the obligation of the bankrupt corporation to Baker evidenced by his second mortgage bonds was such as to make it exceedingly doubtful whether, in respect to the account for $702, that debt would be regarded as "mutual and in the same right" within the meaning of the act. Sawyer v. Hoag, 17 Wall. 610, 622, 21 L.Ed. 731; Kiskadden v. Steinle, 203 F. 375, 380 (C.C.A.6).

The action of the referee in allowing the set-off against Baker's $50,000 note is approved and confirmed and the relief sought by the petition for review is denied.

This leaves for consideration the petition filed by the executors of Baker and Stanhope and Auval Baker seeking review of the action of the referee in denying their

claims for allowance for costs and expenses which they incurred in instituting and prosecuting litigation which resulted in the rescue of the entire estate of the bankrupt from the unlawful and preferential claims of the mortgage bondholders and the preservation of it for the benefit of the general creditors, but for which they would have received nothing. The claim to reimbursement for these expenditures rests upon the provisions of section 64b of the Bankruptcy Act, as amended (11 U.S.C.A. § 104(b) which provides:

"(b) The debts to have priority, in advance of the payment of dividends to creditors, and to be paid in full out of bankrupt estates, and the order of payment shall be (1) the actual and necessary cost of preserving the estate subsequent to filing the petition; (2) the filing fees paid by creditors in involuntary cases, and, where property of the bankrupt, transferred or concealed by him either before or after the filing of the petition, shall have been recovered for the benefit of the estate of the bankrupt by the efforts and at the expense of one or more creditors, the reasonable expense of such recovery."

■ . Without reviewing in detail the steps which were taken by these creditors in that litigation, it is enough to say that it was entirely due to their efforts that the preferential transfer of the entire estate of the bankrupt by mortgage to bondholders was held invalid as to general creditors and the estate was thereby made available for the benefit of general creditors. Under the conditions shown to have existed in this case, action on the part of these creditors for the protection of general creditors as a class was made imperative by the position taken by the trustee in approving and insisting upon priority of the mortgage bonds over general creditors, and in failing to take action to set aside the unlawful preference evidenced by the mortgages. In re Roadarmour, 177 F. 379 (C.C.A.6). The mere fact that the result of the litigation turned upon the question of priority as between the general and secured creditors does not seem to alter the nature of the results attained for the benefit of the estate within the meaning of the Bankruptcy Act. The mortgage was a preferential and unlawful transfer of its estate by the bankrupt corporation in so far as it affected the rights of its general creditors, and, whether the successful action of these claimants in invalidating the unlawful preference be regarded as a "preservation" or "recovery" for the benefit of the estate, the conclusion seems inescapable that the services rendered are of such a nature as to be entitled to allowance and payment out of the estate within the meaning of section 64b of the Bankruptcy Act. In re Stearns Salt & Lumber Co., 225 F. 1 (C.C.A.6).

The provision of the Bankruptcy Act, above referred to, giving such allowances priority and providing for their payment "in advance of the payment of dividends to creditors, and to be paid in full out of bankrupt estates," negatives the idea that such allowances should be charged against or deducted from the amount going to general creditors where the general estate is sufficient to pay them.

■ Irrespective of the number of creditors who participated in the litigation or the number of attorneys employed by them, only one reasonable attorney's fee may be allowed, subject to an equitable apportionment between the creditors. The referee, of course, will restrict the allowance to those particular services rendered in the special litigation referred to.

It follows from these conclusions that the petition for review filed by the executors and Auval Baker must be granted. The order of the referee, disallowing their expense claims in toto, must be set aside, and this case remanded to the referee for further proceedings consistent herewith.

Let an order be entered accordingly.