## Medley v. Johnson, Trustee, et al.

(Decided October 30, 1923.)

### Appeal from Daviess Circuit Court.

1. Corporations—Purchaser of Stock Held Guilty of Laches and Not Entitled to Set up Fraud.—Where defendant purchased stock from a corporation on December 7, 1918, and gave in payment a note due in three months, and had the note renewed for three months more, taking in each instance an optional contract from the stock salesman by which he could relieve himself of the obligation, and did not notify the corporation of his desire to return the stock until May 29, 1919, at which time the corporation agreed to cancel the note, but defendant did not return the stock and certificate, and only offered to do so when he filed his answer in an action on the note many months after the corporation went into bankruptcy, he was guilty of laches, and could not set up the defense of fraudulent representations.

2. Equity—"Laches" is Neglect to do that which by Law a Man is Obliged or in Duty Bound to do.—"Laches" is said to be unreasonable delay, neglect to do that which by law a man is obliged or in duty bound to do, but unlike limitation is not a mere matter of time but principally a question of the inequity of permitting the claim to be enforced because of some change in the condition or relation of the parties to the property.

E. B. ANDERSON and W. FOSTER HAYS for appellant.

RICHARD H. SLACK, R. M. HOLLAND and D. A. SACHS, JR., for appellee.

OPINION OF THE COURT BY CHIEF JUSTICE SAMPSON— Affirming.

On December 7th, 1918, appellant Medley purchased from Carter, agent of the W. P. Williams Oil Corporation, 900 shares of the capital stock of the corporation for the price of $1,575.00, and executed his note to Carter for that sum, due in ninety (90) days, with interest from date, at six per cent. Simultaneously the parties executed the following writing:

"Owensboro, Ky., December 7, 1918.

"Ben F. Medley, having purchased from me this date 900 shares of the dividend-bearing capital stock of the W. P. Williams Oil Corporation, giving his note payable ninety days from date for $1,575.00, bearing 6% interest

from date until paid, I hereby agree to take this stock, or any part of it, off his hands for the amount of the note if for any reason he does not care to take same up at maturity.

"CHAS. V. CARTER."

When the note became due on March 7, 1919, it was renewed for another three months and the following contemporaneous agreement was entered into:

"Lexington, Ky., March 7, 1919.

"Ben F. Medley, having purchased from me on December 7, 1918, 900 shares of the capital stock of the W. P. Williams Oil Corporation, giving his note payable ninety days from December 7, 1918, for $1.575.00, bearing 6% from date until paid, in payment for said stock.

"Ben F. Medley, desiring to renew said note for ninety days, which is satisfactory to the undersigned, I hereby renew the original agreement made with him at the time of the purchase of the stock in the W. P. Williams Oil Corporation and agree to take said stock off his hands for the amount of the note if for any reason he does not take same up at maturity.

"CHAS. V. CARTER."

In January, 1920, the company was adjudged a bankrupt and appellee Johnson was appointed trustee. In June following he commenced this action against Medley. In his answer Medley charged that the note was obtained from him by and through the fraud and misrepresentation of the agent of the company, and that the stock belonged to the company and that Carter was only acting for it as its sales agent and had no other interest in the note, and that the note had been assigned by Carter to the company, which was the sole owner of same. A general demurrer was sustained to the answer with leave to amend. Upon the filing of an amendment a general demurrer was again interposed and sustained. Another amendment, by leave of court, was filed with like result, whereupon defendant declined to further plead and his answer and counterclaim were dismissed. Among other things he pleaded the collateral agreement giving him an option to rescind his contract and surrender his stock and have a cancellation of his note, it being averred that on May 29, 1919, he exercised this option by notifying the corporation that he would surrender the stock and de-

sired a cancellation of his note and averred that the corporation "not only acquiesced in defendant's election not to pay same, but agreed that his said election not to take said stock and not to pay said note should be and they were in force and that said note should then be and it was void and of no binding force or obligation on this defendant, and that the said nine hundred (900) shares of stock hereinabove referred to should be and they were then the property of said corporation and not of this defendant, and that said note should be returned to this defendant, which, however, said corporation failed and neglected to do, and that said transaction was thus closed and completed more than four months and more than six months before the filing of the petition in bankruptcy against said W. P. Williams Oil Corporation." It is also averred in the answer that at the time of the alleged cancellation of the contract appellant believed the corporation solvent and that it did not go into bankruptcy until the January following. The answer also avers that after the purchase of the stock appellant was paid dividends as follows: January 19, 1919, $18.00; February 19, 1919, $18.00; March 19, 1919, $18.00; April 19, 1919, $18.00; June 19, 1919, $18.00, a total of $90.00, which said sum appellant tendered to the trustee with his answer; and he also tendered the stock certificate for 900 shares and asked a cancellation of his note in accordance with the alleged rescission of the contract and option agreement.

"A subscription to shares in a corporation," says 10 Cyc., page 439, "which has been obtained by fraudulent representations may be annulled by the subscriber, if he rescinds promptly, and before the rights of creditors or shareholders subsequently joining have accrued."

The same text, on page 441, says:

"The rule in America, shown by numerous cases, many of which include various elements of estoppel, is that after the insolvency of a corporation, or after proceedings in bankruptcy with respect to it have supervened, no shareholder can withdraw from that relation and escape liability to creditors on the ground that his share subscription was the result of fraud practiced upon him. As in England, so in America, the fact that a shareholder was induced to take the shares by false representations will afford no defense to an action by creditors of the corporation to enforce his statutory liability.

Nor can a person who has been induced to become a shareholder in a corporation by fraudulent representations recover the amount paid by him on his subscription, after the corporation has become insolvent, until the claims of its creditors are satisfied."

The question in this case is: Was appellant Medley guilty of laches and thereby deprived of his defense of fraud in the obtention of the note? In the case of Kentucky Mutual Investment Company v. Shaffer, 120 Ky. 227, a stock subscription case somewhat like the one at bar, we held that where there has been a failure to exercise care to discover the fraud, and the rights of innocent parties will suffer by granting the belated relief, then he whose negligence has caused the loss should bear it; but where a subscriber for stock is in no fault, and is himself the innocent victim of a fraud, which he did not, and could not discover before the perpetrator of the fraud failed, he is entitled to make any defense against the assignee or creditor which he could make against the assignor. Under the peculiar facts of that case it was said that he could not discover the fraud owing to the intricate and involved nature of the plan and processes of the investment company, and there having elapsed only a few months from the time of the purchase of the stock until the company failed, the subscriber was not guilty of such laches as barred his right to relief from the fraud perpetrated upon him by the company and its salesman in inducing him to buy the stock. While the time which elapsed between the purchase of the stock and the insolvency of the company is not definitely stated in that case, it is made to appear as rather a brief period. In as much as the nature of the business of the investment company was abstruse, the time allowed a customer to investigate the representations of the salesman which induced the purchase of the stock was greater than would have been necessary or allowable to discover fraud in a less involved transaction.

In order to correctly determine the rights of the parties in this case we must decide whether the facts we have before us bring it within the rule stated in the Shaffer opinion, or within the rule stated in the more recent case of Reed. v. Owensboro Savings Bank, 141 Ky. 444, and in the yet more recent case of Preston v. Jeffries, Receiver, 179 Ky. 384, in which latter case we stated the rule to be "that the alleged defrauded subscriber in such cases must

move within a reasonable time after the opportunity to discover the fraud to obtain relief either by reformation of his contract or a cancellation of it, else he will be guilty of laches which will deprive him of the benefits of the defense of fraud. This is peculiarly and especially the rule after the corporation has become insolvent and is in process of liquidation for the purpose of collecting its assets and disbursing the proceeds among those entitled thereto. This is true whether the liquidating process be a voluntary one, such as an assignment for the benefit of creditors, or whether it results from a court proceeding instituted for that purpose, as in the case of the appointment of a receiver at the instance of one having a right to do so. These general rules governing the right of a subscriber for the stock to avail himself of fraud practiced upon him in obtaining his subscription when sued thereon are of universal recognition, and will be found stated in 29 Amer. & Eng. Ency. of Law pp. 937-939; 10 Cyc. 421-423; 7 R. C. L. 238; Little v. Owensboro Savings Bank & Trust Co., 150 Ky. 331. These authorities, and especially the cases referred to from this court, hold that, if the shareholder has been vigilant in discovering fraud, and has been guilty of no laches in taking the necessary steps to obtain relief from it, he will not be denied the defense, although proceedings may have been instituted for the purpose of winding up the affairs of the corporation because of its insolvency. But the cases from this court further hold that, if the delay on the part of the shareholder to bestir himself to discover the fraud and to obtain relief because of it has been such as to charge him with laches, he cannot, as against the rights of creditors of an insolvent corporation, rely upon the fraud as a defense in a suit to collect his subscription or a note executed therefor.''

Applying this rule to the facts before us, we are quite convinced that appellant did not present a sufficient defense by his answer as amended and the court did not err in sustaining a demurrer thereto. He purchased the stock on December 7, 1918, and gave in payment a note due in three months. When the note became due he renewed it for three months more, taking in each instance an option contract by which he could relieve himself of the obligation. He says that on May 29, 1919, he notified the corporation of his desire to return the stock, to cancel the

note and annul the contract, and that the corporation agreed to this proposition but neglected to cancel the note, and appellant did not return the stock certificate and only offered to do so when he filed his answer many months after the corporation went into bankruptcy. The corporation did not go into bankruptcy until January, 1920, about seven or eight months after the alleged oral cancellation of the contract. He pleads, however, that on June 19, 1919, he received dividends on his stock. This was after the alleged cancellation of the contract on May 29th, 1919. These dividends he accepted and retained and applied to his own purposes until long after this suit was commenced. The alleged false representation of which appellant complains is that the agent Carter stated to him at the time appellant purchased the stock that the corporation owned three oil wells, each producing 400 barrels per day; that the corporation owned in fee a piece of real estate for which it had been offered a sum equaling an amount three times as great as its authorized capital stock, and that the authorized capital stock of the corporation was $1,500,000.00, and that the corporation had twelve (12) drilling rigs at work drilling for oil in eastern Kentucky, when in truth and in fact all such statements and representations were false and known to be so by the agent of the company at the time he made them to appellant, and they were made for the purpose of deceiving and misleading appellant into buying the stock and executing his note for the purchase price. The truth or falsity of these representations would not have been very difficult of ascertainment. It would have been a matter of no great difficulty for appellant Medley to have learned by inquiry within three months from the giving of the note whether the corporation owned three oil wells producing 400 barrels per day at the time of the purchase of the stock, and whether it owned in fee simple a piece of real estate for which it had been offered a sum equal to three times $1,500,000.00, and also whether it owned twelve drilling rigs which it was operating, drilling wells in eastern Kentucky. Certainly he could have learned these facts by reasonable inquiry within six months. The facts, therefore, are very different from those in the Shaffer case upon which he relies. They are very similar in fact to those found in the Reed case and in the Preston case, *supra.*

Laches is said to be unreasonable delay; neglect to do that which by law a man is obliged or in duty bound to do; neglect to do a thing or to seek to enforce a right at a proper time; neglect to do what in law should have been done, for an unreasonable and unexplained length of time and under circumstances permitting diligence. Unlike limitation, laches is not a mere matter of time, but principally a question of the inequity of permitting the claim to be enforced; an equity founded upon some change in the condition or relation of the property of the parties. A mere lapse of time before bringing suit without change of circumstances will not constitute laches. Not only must there have been unnecessary delay but it must appear that by reason of the delay some change has occurred in the condition or relation of the parties to the property which would make it inequitable to enforce the claim.

Appellant Medley did not exercise reasonable diligence after his alleged cancellation of the contract on May 29, 1919, to obtain possession of his note and to see that it was cancelled. Nor did he return the certificate of stock for which the note was given. He left the note in the possession of the corporation and allowed the corporation to carry it as one of its assets. He even accepted dividends from the corporation after the alleged cancellation of the contract and thereby reduced the assets of the corporation. It appears he was trying to play fast and loose; to be in if the corporation was a success, and to be out if it were not. Neither the law nor equity would allow him to do so. Had he exercised reasonable diligence he would not only have declined to accept dividends on his cancelled stock, if cancelled it were, but he would have delivered his certificate to the corporation and demanded of it his note, and caused the old transaction to be cancelled upon its books long before it went into bankruptcy. Had he done so he would have been relieved from his obligation to pay the note, but having failed to do so he is now in no position to complain of the judgment of the chancellor below.

For the reasons indicated the judgment is affirmed.

Judgment affirmed.