# A. H. Thompson Co. v. Security Insurance Co. et al.

(Decided Dec. 15, 1933.)

·428

E. SELBY WIGGINS for appellant.

F. M. DRAKE and H. E. HAY for appellees.

OPINION OF THE COURT BY JUDGE RICHARDSON—Reversing.

A. H. Thompson Company, a corporation with resident office at Louisville, Ky., in June, 1930, was the distributor of Frigidaire products of the General Motors Corporation. Geo. H. Myers was a sales agent of the A. H. Thompson Company, engaged in business at Richmond, Ky., and, for it, he sold to Milford Kirby, residing at West Irvine, Ky., a Frigidaire. The sale was evidenced by a writing, setting out the purchase price and the terms and conditions of the trade, and provided for a lien on the Frigidaire equipment, and

that Kirby should keep it insured against loss by fire to protect all parties interested therein, the title not to pass to the purchaser unil the purchase price was paid. Kirby executed and delivered a note evidencing the purchase price. The note and the contract evidencing the sale were transferred by Myers to the General Motors Acceptance Corporation, with a guaranty of payment of the purchase price. The A. H. Thompson Company also guaranteed its payment by an indorsement on the back of the contract. The Security Insurance Company, through its Estill Insurance Agency, Irvine, Ky., between June, 1930, and August, 1930, issued to Kirby a policy insuring him in the sum of $510 against the destruction of the refrigerator equipment by fire. Later it was destroyed by fire. At that time, the note of $510 secured by a lien on the refrigerator equipment was unpaid. At the time Kirby secured the policy of insurance, he informed the agent of the Security Insurance Company that Myers wanted him to take out more insurance to cover the refrigerator equipment, and he desired insurance, for that reason, of the amount of $510. Before the agent issued it, Kirby exhibited to him a duplicate of the sales contract, which he had signed and delivered to Myers at the time he purchased the refrigerator equipment, and informed him that he wanted the policy written so as to protect the finance corporation and himself against the destruction of the refrigerator ecqupiment by fire. The premium on the policy was $9.70, which was paid to the agent. At the time the agent prepared and issued it, the sales contract was in his presence. In the policy he wrote this language:

"It is understood and agreed that the refrigerator equipment, covered in this policy is being bought by the insured on the installment plan from the refrigerator Company of Dayton, Ohio; however, any insurance that may prove due may be paid to the insured."

After the refrigerator equipment was destroyed, the agent stated to Myers that "he wrote to the refrigerator people at Dayton, and asked them how it should be written" and he had written it with the quoted language in it as "they told him to do it." In his conversation with Myers, the agent assured him there was "no use in getting alarmed" about the policy; he would "get the money when the insurance co. pays the loss."

On November 8, 1930, Myers wrote and mailed a letter to the Estill Insurance Agency, which issued the Milford Kirby policy. It responded by letter thus:

"Replying to your letter of the 8th. regarding the contract of yourself with Milford Kirby for the equipment that you sold him sometime prior to the fire. We are of the opinion that this matter will be settled within the next few days when your claim will have preference as we are sure there will be no more settlements made until this account has been taken care of.

"Yours truly,

"Estill Insurance Company

"By E. A. Smithers."

The policy was paid by the Security Insurance Company mailing a draft directly to Kirby. He delivered it to his attorney, who deposited it in bank to the credit of Kirby, when the proceeds were attached by his other creditors. The General Motors Acceptance Corporation thereafter assigned the note and sales contract, and delivered them to the A. H. Thompson Company. The latter instituted this action to recover of the Security Insurance Company the face of the policy, $510. It bases its right to recover on two grounds: First, reformation of the policy because of mutual mistake of the parties; second, existance of a lien and actual knowledge thereof on the part of the insurance company. The Security Insurance Company, Geo. H. Myers, Milford Kirby, and the General Motors Acceptance Corporation were made defendants. Its petition sets forth the sale of the Frigidaire equipment, the execution and delivery of the note and sales contract, and avers its ownership of the note executed for the purchase price; also the conditions of the sales contract showing the retention of title and the lien on the Frigidaire equipment. A provision of the conditional sales contract reads:

"Purchaser shall keep said property insured against loss by fire to properly protect all interest therein, and on failing to do so seller may procure said insurance. Purchaser agrees to pay premium on demand and that on failure to do so payment of same shall be secured by this contract. The proceeds of any insurance, whether paid by reason of loss, injury, return premium or otherwise, shall be applied

toward the replacement of the property or payment on this obligation at the option of the seller."

Only the testimony of A. H. Thompson, Milford Kirby, Geo. H. Myers, the conditional sales contract, the notes and the indorsements thereon, the policy, and the letter of the insurance agency are in the record. We are not favored with the testimony of the agent who prepared the policy and wrote therein the clause supra.

It is manifest that the cause of this litigation is that portion of the interlineation in the policy made by the agent, which reads, "however, any insurance that may prove due may be paid to the insured." Other language of the policy shows it was to be paid to the insured; it was wholly unnecessary to insert in the policy words showing that the insurance "that may prove due may be paid to the insured." The agent was apprised by Kirby that the object of procuring the policy was to protect the interest of all parties interested in the Frigidaire equipment under the sales contract. The conditional sales contract, exhibited to the agent, shows their respective interests. The parties were in good faith, and it is very apparent that, where the word "insured" appears in the phrase, "however, any insurance that may prove due may be paid to the insured," was inadvertently written instead of a loss payable clause for the benefit of the seller of the Frigidaire equipment. There is no doubt or room for doubt that Kirby and the agent of the insurance company agreed the policy was to be so written as to insure the Frigidaire equipment to protect all interested parties. And that, in drafting the policy by inadvertence or the negligence of the agent of the insurance company, he inserted therein the above quotation, instead of language adequate to constitute a loss payable clause sufficient to protect the holder of the equitable lien.

An unilateral mistake is not ground for reforming a written instrument; hence a contract which agrees with the intention of one party, though executed under a mistake by the other, cannot be reformed. Kentucky Title Co. v. Hail, 219 Ky. 256, 292 S. W. 817. Equity, however, will reform such instrument where the mistake is mutual; that is, a mistake reciprocal and common to both parties, as where there has been a meeting of the minds and an agreement actually entered into, but the written instrument does not express the real intention

of the parties (Litteral v. Bevins, 186 Ky. 514, 217 S. W. 369), or because of a mistake of the draftsman of the instrument where the evidence is clear and convincing showing the mistake (Rice v. Hall, 42 S. W. 99, 19 Ky. Law Rep. 814). A reformation of an instrument may be had not merely by the immediate parties to it, but by those standing in privity with them. Eastern Gulf Oil Co. v. Lovelace, 188 Ky. 238, 221 S. W. 544. On the undisputed evidence establishing that the policy was not written and issued in accordance with the agreement of Kirby and the insurance agent so as to protect the interest of all parties concerned, that such was the product of the negligence of the agent at the time of the preparation of the policy, equity will afford relief. The A. H. Thompson Company is entitled to have the agent's mistake corrected by reforming the policy to conform to his and Kirby's agreement. Williams v. Harvey, 192 Ky. 684, 234 S. W. 315; Burton v. American Bonding & Trust Co., 182 Ky. 637, 206 S. W. 884. The facts and circumstances disclosed by the testimony of the witnesses established beyond debate that the agent, before and at the time he prepared and signed the policy, had in his possession the conditional sales contract or a copy of it, disclosing to him the interest in, title reserved to, and lien of the seller on, the Frigidaire equipment. The agent was authorized to issue and deliver the policy for the company and such notice to him was notice to the company of the interests, title, and lien of the seller, as well as the interest in, and Kirby's right of possession of, the Frigidaire equipment. Rogers v. Farmers' Mutual Aid Ass'n of Mason County, 106 Ky. 371, 50 S. W. 543, 20 Ky. Law Rep. 1925; Germania Ins. Co. v. Wingfield, 57 S. W. 456, 22 Ky. Law Rep. 455; Conn. Fire Ins. Co. v. Moore, 154 Ky. 18, 156 S. W. 867, Ann. Cas. 1914B, 1106; Ky. Central Life & Accident Ins. Co. v. Edmondson, 218 Ky. 825, 292 S. W. 511. The knowledge of the agent who issued the policy to Kirby was knowledge of the insurance company, and it cannot set up as a defense its own ignorance of facts conveyed to him by the language of the conditional sales contract; or of the information imparted to him by Kirby during the negotiations for the insurance; nor rely on the limitation of the power of the agent unknown to Kirby at the time. Continental Casualty Co. v. Linn, 226 Ky. 328, 10 S. W. (2d) 1079; Niagara Fire Ins. Co. of N. Y. v. Johnson, 231 Ky. 426, 21 S. W. (2d)

794; Firemen's Ins. Co. of Newark, N. J., v. Yarbrough, 234 Ky. 525, 28 S. W. (2d) 771; N. Y. Underwriters' Ins. Co. v. Ray, 246 Ky. 105, 54 S. W. (2d) 627. The knowledge of the agent of the Security Insurance Company, whether he be regarded as an agent to solicit insurance, or solicit, receive, or accept applications for insurance, or to do all these things and deliver the policy and receive the premium, his knowledge is imputed to the company. Ins. Co. of No. America v. Somner, 234 Ky. 340, 28 S. W. (2d) 14; Continental Ins. Co. of City of N. Y. v. Simpson, 220 Ky. 167, 294 S. W. 1048; Crawford's Adm'r v. Travelers' Ins. Co. of Hartford, Conn., 124 Ky. 733, 99 S. W. 963, 30 Ky. Law Rep. 943, 124 Am. St. Rep. 425. Though its agent, in the preparation of the policy, through neither inequitable nor negligent conduct, omitted from the policy the loss payable clause for the benefit of the seller of the Frigidaire equipment, the insurance company, having actual notice of the interest, title, and lien of the seller as evidenced by the conditional sales contract, at the time of the procurement of the policy by Kirby, even though it was obtained by him, without the knowledge or consent of the seller, is liable to the seller for the face of the policy. The conditional sales contract required the purchaser to secure and maintain the insurance on the Frigidaire equipment with a loss payable clause to the seller. It is a settled rule that, where a mortgagor or lienor is charged with the duty of taking out insurance for the benefit of the lienholder, the latter is entitled to an equitable lien on the proceeds of the insurance policy, although it, in terms, is payable to the mortgagor or lienor. Under this accepted rule, the seller of the Frigidaire equipment had an equitable lien on the proceeds of the policy to protect it against the loss, and, when the Security Insurance Company accepted the risk on the Frigidaire equipment with actual notice of the existence of the provisions of the conditional sales contract, it became bound by this equitable lien in favor of the seller, and is liable to it because it ignored such actual notice of the provisions of the conditional sales contract and paid the proceeds of the insurance to Kirby. The case of Northwestern Fire & Marine Ins. Co. of Minneapolis, Minn., v. N. Y. Life Ins. Co., 238 Ky. 229, 37 S. W. (2d) 67, is conclusive of this issue.

The distinction between it and the present one as presented in brief of the Security Insurance Company,

while plausible, rests upon a fanciful theory. In its brief, the Security Insurance Company argues "the insurance company had paid its claim in full—the face of its policy—to the assured [the owner of the property] with whom it made its contract and there is no legal or moral basis for asking it pay the loss over again to this creditor of the assured, who sat by and failed to protect itself, either with insurance, or by proper method of asserting its alleged lien." "This loss occurred in Aug. 1930. Shortly afterwards Myers saw the Security Policy and knew it contained no loss payable clause to the General Motors Acceptance Corp. Nothing was done until November 8th 1930, when Myers wrote a letter asking the agent about the settlement of the loss. Then on Dec. 2nd 1930 the draft was delivered and deposited at once in the Richmond Bank with full knowledge on Myers' part and nothing was done to assert any claim. * * * Even after waiting until the following March before making any claim that there was any obligation on the part of the insurance company in connection with this matter. * * * We think that the history of the transaction thoroughly illuminates the character of this suit."

The argument overlooks the fact that the prime cause of this litigation is the negligence of the agent in omitting from the policy the loss payable clause and the inequitable conduct of the insurance company in overlooking its duty to protect the seller's equitable lien on the proceeds of the policy, of which it had actual notice through its agent before it paid the same to Kirby. Its duty to protect the equitable lien on the proceeds of the policy was not violated by it until it paid Kirby the proceeds of the policy. The owner of this lien had the right to assume that the Security Insurance Company would regard its duty in respect to the equitable lien on the proceeds of the policy and not pay it to Kirby. Until this was done, there was no occasion for a proceeding in equity or at law to compel it to observe its duty as to the equitable lien on the proceeds. The delay of the owner of this equitable lien in bringing this action to enforce its right under the policy has worked no injury or damage to the Security Insurance Company. Laches is an unreasonable delay or neglect to do that which a man by law is obliged and duty bound to do. It is principally a question of the inequity of permitting a claim to be enforced because of some change

in the condition or relation of the parties to the subject-matter involved. Medley v. Johnson, Trustee, 200 Ky. 689, 255 S. W. 532. Nothing the A. H. Thompson Company or its assignor has done or left undone since the proceeds of the policy were paid to Kirby has either directly or indirectly affected or changed the status of the Security Insurance Company.

The judgment of the circuit court not being in harmony with our views, it is reversed, with directions to enter judgment for the A. H. Thompson Company and for proceedings consistent with this opinion.