CADLEWAY PROPERTIES,
INC., Appellant,

v.

BAYVIEW LOAN SERVICING, LLC;
Dehoney Travel, Inc.; and KB
Building, LLC, Appellees.

No. 2009–CA–001428–MR.

Court of Appeals of Kentucky.

Sept. 24, 2010.

Mason L. Miller (argued) and Will E. Messer, Lexington, KY, for appellant.

T. Morgan Ward, Jr. and Chadwick A. McTighe (argued), Louisville, KY, for Appellee, Bayview Loan Servicing, LLC.

No Brief Filed for Appellee, Dehoney Travel, Inc.

No Brief Filed for Appellee, KB Building, LLC.

Before COMBS, KELLER, and LAMBERT, Judges.

## OPINION

KELLER, Judge:

Cadleway Properties, Inc. (Cadleway) appeals from the Jefferson Circuit Court's entry of summary judgment in favor of Bayview Loan Servicing, LLC (Bayview). This dispute arises from the interpretation of a subordination agreement (the Subordination Agreement) and whether it gives Cadleway's mortgage priority over a mortgage held by Bayview. The trial court concluded that Bayview's mortgage was superior to Cadleway's mortgage. For the reasons set forth below, we reverse and remand.

## FACTUAL AND PROCEDURAL BACKGROUND

The relevant facts are not disputed. On June 15, 2002, KB Building, LLC (KB Building) entered into a promissory note with Fifth Third Bank of Kentucky, Inc. (Fifth Third) in the amount of $246,027.55 (the First Note), which was secured by a mortgage (the First Mortgage). The First Mortgage encumbered property located at 1026 S. 3rd Street, Louisville, KY 40203 (the Third Street property), and was recorded on July 22, 2002, in Mortgage Book 6854, Page 471 in the office of the Jefferson County Clerk.

On March 24, 2004, KB Building entered into a second note with Fifth Third in the amount of $570,000 (the Second Note), which was secured by a second mortgage (the Second Mortgage). The Second Mortgage also encumbered the Third Street property and was recorded on April 7, 2004, in Mortgage Book 8587, Page 568, in the office of the Jefferson County Clerk.

On September 28, 2004, KB Building entered into a promissory note with Inter-Bay Funding, LLC (InterBay) in the amount of $682,500 (the Third Note), which was secured by a mortgage on the Third Street property (the Third Mortgage). Also, on September 28, 2004, KB Building executed an Assignment of Leases and Rents (the Assignment) whereby it assigned its rights to leases and rents from the Third Street Property secured by the Third Mortgage to InterBay. In connection with this transaction, Fifth Third and InterBay entered into the Subordination Agreement, which is dated September 17, 2004.

The Third Mortgage, Assignment, and Subordination Agreement were all recorded within two minutes of each other on October 7, 2004, in the office of the Jefferson County Clerk. The Third Mortgage was recorded first in Mortgage Book 8974, Page 653. Next, the Assignment was recorded in Deed Book 8501, Page 301. Finally, the Subordination Agreement was recorded in Deed Book 8501, Page 313.

At issue in this appeal is the language in the Subordination Agreement. The opening paragraph of the Subordination Agreement states that Fifth Third is the holder of a mortgage on property owned by KB Building that is recorded at Mortgage Book 6854, Page 471 in the office of the Jefferson County Clerk. In the second paragraph, the Subordination Agreement states that KB Building has requested a loan in the amount of $750,000 from Inter-Bay, which is to be secured by a mortgage on the property subject to the Fifth Third mortgage. The Subordination Agreement further states that:

> [Fifth Third] has agreed that the lien of the mortgage to [InterBay] shall be a prior lien upon said real estate and shall be prior to the lien of their above described Mortgage recorded in Mortgage Book 6854, page 471, in the office of the Clerk of Jefferson County, Kentucky.

The third paragraph states in relevant part the following:

> [F]or the purpose of inducing [InterBay] to make said proposed loan to [KB Building], secured by a mortgage lien shown under Mortgage Book *8974*, Page *653* in the Jefferson County Clerk's Office, [Fifth Third], for the purpose of any release that might be necessary by them does hereby agree and waive priority of their above described lien of mortgage recorded in Mortgage Book 6854, page 471 in favor of the lien and priority of said mortgage shown as Mortgage Book *8501*, Page *301* in the amount of Seven Hundred Fifty Thousand and 00/100 ($750,000.00) dollars to be executed in favor of [InterBay], and said mortgage shall be in all respects prior and superior to the lien of mort-

gage to [Fifth Third] recorded in Mortgage Book 6854, page 471 to the same extent and purpose as if said Mortgage and said loan in favor of [InterBay] had been made, executed and recorded prior in time to the making, execution and recording of said above described mortgage in favor of [Fifth Third] recorded in Mortgage Book 6854, page 471.

The underlined portions in the above quotation reflect handwritten entries. The first handwritten numbers correctly refer to the Third Mortgage being recorded at Mortgage Book 8974, Page 653. However, the second handwritten numbers, Mortgage Book 8501, Page 301, refer to a mortgage unrelated to the case at bar.[1] While the numbers 8501 and 301 match the numbers to the book and page number where the Assignment was recorded, the Assignment was recorded in the Deed Book and not the Mortgage Book.

On June 24, 2005, InterBay assigned the Third Note and Third Mortgage to Bayview. Further, on September 25, 2005, Fifth Third assigned the First Note and First Mortgage to Cadleway.

On December 19, 2005, Bayview initiated this action against KB Building alleging that KB Building had defaulted under the terms of the Third Note secured by the Third Mortgage. On April 17, 2006, Bayview filed an Amended Complaint naming Cadleway as a defendant as a competing lien holder.[2] Specifically, Bayview alleged that the Third Mortgage was a prior and superior lien to the First Mortgage. On May 12, 2006, Cadleway filed an Answer, Crossclaim and Counterclaim alleging that KB Building defaulted on the note secured by the First Mortgage. Further, Cadleway alleged that the First Mortgage was a prior and superior lien to the Third Mortgage and that the First Mortgage was only subordinate to the Assignment.

On February 18, 2008, Bayview filed a Motion for Summary Judgment, Default Judgment and Order of Sale, seeking summary judgment against Cadleway on the issue of lien priority. On December 4, 2008, Bayview filed a Renewed Motion for Summary Judgment, Default Judgment, and Order of Sale. In its motion, Bayview argued that the language in the Subordination Agreement was clear and that it subordinated the First Mortgage to the Third Mortgage. In support of its motion, Bayview attached an Affidavit of Theresa M. Fach (Fach), who acted as the closing agent for Bayview's predecessor in interest, InterBay, and negotiated with Fifth Third on behalf of InterBay.

In her affidavit, Fach stated that InterBay was not going to make a loan to KB Building without a subordination agreement for the First Mortgage. Specifically, she stated that when InterBay was considering making a loan to KB Building, there were multiple liens against the property, including the First Mortgage for approximately $246,000 and the Second Mortgage for $570,000. According to Fach, the proceeds of the InterBay loan were used to pay off the Second Mortgage and to bring the First Mortgage current. Fach further stated that in connection with the transaction, Fifth Third received a payoff check in the amount of $571,721.88 for the Second Mortgage. Additionally, Fach stated that

---

1. The mortgage recorded in Mortgage Book 8501, Page 301 was executed on February 27, 2004, from PRITHVI, LLC to First Citizens Bank upon unrelated property to secure a loan in the amount of $4,130,000.

2. Dehoney Travel, Inc. (Dehoney) was also named as a defendant. However, because it failed to assert a claim or interest in the real property at issue, the trial court awarded Bayview a default judgment against Dehoney. This issue is not relevant to this appeal.

in a telephone conversation, Fifth Third agreed to subordinate the First Mortgage to the Third Mortgage.

Fach also said that prior to closing on the Third Note and Third Mortgage, she prepared the Subordination Agreement for the First Mortgage, and left two blanks in the subordination agreement for the county clerk to fill in with the recording information for the Third Mortgage. Fach subsequently received the executed Subordination Agreement from Fifth Third, and at the time of closing, the Subordination Agreement was sent to the Jefferson County Clerk's office. According to Fach, the Third Mortgage was recorded first, and the clerk then filled in the blanks on the Subordination Agreement prior to recording it. While the first set of blanks was filled in correctly, the clerk incorrectly filled in the second set of blanks.

Cadleway filed a Cross–Motion for Summary Judgment on January 13, 2009, arguing that it was entitled to judgment on the issue of lien priority because the Subordination Agreement failed to subordinate the First Mortgage to the Third Mortgage. On February 4, 2009, the Master Commissioner issued his report finding that the Subordination Agreement subordinated the First Mortgage to the Third Mortgage. On February 13, 2009, Cadleway filed its Objection to the Master Commissioner's Report arguing that the report should be set aside so that the parties could complete briefing. On February 23, 2009, Bayview filed its Notice–Motion to Adopt Commissioner's Report. On February 27, 2009, the trial court entered a Judgment and Order of Sale consistent with the Master Commissioner's Report in favor of Bayview. The trial court concluded that the Third Mortgage was superior to the First Mortgage.

Subsequently, Cadleway filed a Motion to Alter, Amend or Vacate Judgment pursuant to Kentucky Rule of Civil Procedure (CR) 59.05, and the trial court entered an order denying that motion on April 23, 2009. Cadleway did not file a notice of appeal within the thirty-day time limit after entry of that order, and the property was sold by the Master Commissioner on May 26, 2009. During oral argument to this Court, counsel for both parties conceded that the funds received from the sale of the Third Street property are currently being held in an escrow account.

On June 18, 2009, Cadleway filed a motion pursuant to CR 60.02, asking the court to vacate the April 23, 2009, order and enter a new order. Cadleway argued that it did not receive a copy of the trial court's April 23, 2009, order and asserted that it did not learn of the order until June 11, 2009, which was after its time to appeal had expired. On July 15, 2009, the trial court granted Cadleway's CR 60.02 motion and vacated its April 23, 2009, order. In the same order, the trial court again denied Cadleway's request for CR 59.05 relief. This appeal followed.

## STANDARD OF REVIEW

▇ In order to be entitled to summary judgment, a movant must show that there is no genuine issue as to any material fact and that the matter can be resolved as a matter of law. CR 56.03. The construction of a contract, including the determination as to whether there are any ambiguities, is a question of law for the courts to decide and is subject to *de novo* review. *Cantrell Supply, Inc. v. Liberty Mut. Ins. Co.*, 94 S.W.3d 381 (Ky.App.2002); *First Commonwealth Bank of Prestonsburg v. West*, 55 S.W.3d 829 (Ky.App.2000).

## ANALYSIS

A number of issues are raised on appeal. For clarity, we address each issue separately.

### 1. Timely Appeal

At the outset, we note that Bayview contends that Cadleway's appeal is untimely and should be dismissed. Specifically, Bayview argues that pursuant to CR 77.04, Cadleway's failure to receive notice of the CR 59.05 order was not grounds for granting the CR 60.02 motion and extending Cadleway's time to appeal. We disagree.

CR 77.04(4) provides that:

Failure of the trial court to require service of notice of entry of any judgment or order under this rule or the failure of the clerk to serve such notice, or the failure of a party to receive notice, shall not affect the validity of the judgment or order, and does not affect the time to appeal or relieve or authorize the court to relieve a party for failure to appeal within the time allowed, except as permitted in Rule 73.02(1).

As stated in *Kurtsinger v. Board of Trustees of Kentucky Retirement Systems*, 90 S.W.3d 454 (Ky.2002), CR 60.02 "is a safety valve, error correcting device for trial courts[,]" and applies to the following situations: "(a) mistake, inadvertence, surprise or excusable neglect; (b) newly discovered evidence . . .; (c) perjury or falsified evidence; (d) fraud affecting the proceedings . . .; (e) the judgment is void . . .; or (f) any other reason of an extraordinary nature justifying relief." *Id.* at 456 (citation omitted).

In *Kurtsinger*, the Supreme Court of Kentucky addressed the issue of whether a trial court may vacate a CR 59.05 order under CR 60.02 upon a finding that a party did not receive notice of entry of the order. In that case, the trial court concluded that it made a mistake in not including the appellants on the distribution list of the CR 59.05 order. Therefore, the trial court granted the CR 60.02 motion on the basis of "mistake, inadvertence, excusable ne-glect and reasons of an extraordinary nature justifying relief[.]" *Id.* at 455.

In affirming the trial court, our Supreme Court held that upon a finding of excusable neglect, a trial court may vacate a CR 59.05 order under CR 60.02. The finding of "excusable neglect" in *Kurtsinger* was based upon the trial court's own acknowledged mistake of failing to mail the notice to the affected party. The Court further concluded that, although a latent conflict exists between CR 77.04 and CR 60.02, CR 77.04 does not override the "mistake correcting rule" of CR 60.02. *Id.* at 456. Therefore, the Supreme Court concluded that the trial court did not err in granting the CR 60.02 motion.

Bayview argues that *Kurtsinger* does not apply to the instant case and instead relies on *Stewart v. Kentucky Lottery Corp.*, 986 S.W.2d 918 (Ky.App.1998). In *Stewart*, this Court held that the failure of either party to receive notice of the entry of an order denying a motion to reconsider did not justify relief under CR 60.02. This Court reasoned:

True enough, apparently neither party received notice of entry of the order denying the motion to reconsider. Nevertheless, CR 77.04(4) plainly states that the clerk's failure to serve notice or a party's failure to receive notice does not affect the time for taking an appeal. The rule further provides that a trial court is not authorized to grant an extension of time for filing a notice of appeal for any period beyond ten days past the expiration for the time for taking an appeal. Our courts have consistently enforced the harsh dictates of CR 77.04(4).

*Id.* at 920 (internal citations omitted).

However, in *Kurtsinger*, our Supreme Court distinguished the facts in that case from those in *Stewart*:

The significant difference between what transpired in *Stewart* and in this case is that here the trial court merely vacated the initial order denying the motion to alter, amend or vacate the summary judgment. The order vacating was accompanied by findings that the trial court or its staff was at fault for Appellants' failure to learn of entry of the order. The trial court did not attempt to change the date of entry of the order or extend the time for taking an appeal. While the ultimate effect may have been the same, the trial court merely utilized its authority under CR 60.02 to vacate an order in a manner that did not constitute an abuse of discretion.

90 S.W.3d at 457.

Bayview contends that *Kurtsinger* is distinguishable from the instant case in that the trial court did not make a specific finding that the trial court caused Cadleway not to receive notice of the entry of the order. We disagree. In its order granting Cadleway CR 60.02 relief, the trial court stated the following:

> Defendant Cadleway contends it did not receive a copy of the Court's Order denying its CR 59 motion to amend the Court's February summary judgment in favor of the Plaintiff. The Court sees no reason to question that representation.

Because the trial court made a finding that Cadleway did not receive a copy of its order, we conclude that the trial court properly applied *Kurtsinger*. Furthermore, because the proceeds from the sale of the Third Street property are being held in an escrow account, we believe that the trial court was correct in concluding that Bayview would not suffer prejudice. Thus, the trial court properly granted Cadleway's CR 60.02 motion.

We note that we have reviewed the recent opinion by the Supreme Court in *James v. James*, 313 S.W.3d 17 (Ky.2010), and its discussion of CR 60.02. We believe that it is not applicable to the instant case and therefore does not change our analysis as to whether Cadleway timely filed its appeal in this case.

### 2. Ambiguity of Subordination Agreement

■ Having concluded that Cadleway timely filed its appeal, we now turn to the merits of the issues raised by Cadleway. First, Cadleway contends that the Subordination Agreement is unambiguous and that the trial court erred in concluding that it subordinated the First Mortgage to the Third Mortgage. Specifically, Cadleway argues that the plain terms of the Subordination Agreement only subordinates the First Mortgage to a mortgage recorded at Mortgage Book 8501, Page 301, in the amount of $750,000, and not to the Third Mortgage recorded at Mortgage Book 8974, Page 653, in the amount of $682,500.

■ An unambiguous written contract must be strictly enforced according to the plain meaning of its express terms and without resort to extrinsic evidence. *Allen v. Lawyers Mut. Ins. Co. of Kentucky*, 216 S.W.3d 657 (Ky.App.2007). Even if the contracting parties may have intended a different result, a contract cannot be interpreted contrary to the plain meaning of its terms. *Abney v. Nationwide Mut. Ins. Co.*, 215 S.W.3d 699, 703 (Ky.2006). A contract is not ambiguous if a reasonable person would find its terms susceptible to only one meaning. *Cantrell Supply, Inc. v. Liberty Mut. Ins. Co.*, 94 S.W.3d 381, 385 (Ky.App.2002). However, if the provisions in controversy are reasonably susceptible to different or inconsistent, yet reasonable, interpretations, the contract is deemed to be ambiguous. *Id.*

After reviewing the Subordination Agreement, we believe that the Master Commissioner and the trial court were correct in concluding that it is unambiguous. However, we disagree with the conclusion of the Master Commissioner and the trial court that the Subordination Agreement unambiguously subordinated the First Mortgage to the Third Mortgage. The Subordination Agreement clearly states that Fifth Third waived its priority of the First Mortgage "in favor of the lien and priority of said mortgage shown as Mortgage Book *8501,* Page *301* in the amount of Seven Hundred Fifty Thousand and 00/100 ($750,000.00) dollars to be executed in favor of [InterBay]." Although a mortgage in favor of InterBay recorded in Mortgage Book 8501, Page 301, does not exist, this language is clear and cannot be interpreted contrary to the plain meaning of its terms. *Abney,* 215 S.W.3d at 703. Accordingly, by its plain terms, the Subordination Agreement unambiguously subordinated the First Mortgage to the unrelated mortgage recorded in Mortgage Book 8501, Page 301.

### 3. Mutual Mistake and Reformation

Next, Cadleway argues that the Master Commissioner and the trial court improperly reformed the Subordination Agreement. However, Bayview contends that even if the plain terms of the Subordination Agreement do not subordinate the First Mortgage to the Third Mortgage, the trial court may reform the Subordination Agreement to reflect the parties' intent. Specifically, Bayview argues that the Master Commissioner properly concluded that the handwritten insertion of Mortgage Book 8501, Page 301, resulted from a clerical mistake made by the Jefferson County Clerk. Thus, as a result of this mistake, the Subordination Agreement is subject to reformation.

*American Jurisprudence* addresses the mistake of a scrivener or draftsman as follows:

> The remedy of reformation is appropriate where, by reason of an unintentional mistake by a scrivener or draftsman, the written agreement does not accurately reflect the intent of the parties. However, before the reformation of a written contract is warranted, it must be shown that the scrivener's product reflects something other than what was understood by both parties. Under the "doctrine of scrivener's error," the mistake of a scrivener in drafting a document may be reformed based upon parol evidence, provided the evidence is clear, precise, convincing and of most satisfactory character that the mistake has occurred and that the mistake does not reflect the intent of the parties.

66 Am.Jur.2d *Reformation of Instruments* § 19 (citations omitted). In *A.H. Thompson Co. v. Security Insurance Co.,* 252 Ky. 427, 67 S.W.2d 493, 495 (1933), the former Kentucky Court of Appeals addressed mistakes in written instruments, stating:

> An [sic] unilateral mistake is not ground for reforming a written instrument; hence a contract which agrees with the intention of one party, though executed under a mistake by the other, cannot be reformed. Equity, however, will reform such instrument where the mistake is mutual; that is, a mistake reciprocal and common to both parties, as where there has been a meeting of the minds and an agreement actually entered into, but the written instrument does not express the real intention of the parties, or because of a mistake of the draftsman of the instrument where the evidence is clear and convincing showing the mistake.

(Internal citations omitted).

More recently, the Kentucky Supreme Court in *Abney* set out the elements neces-

sary to vary the terms of a writing based on mistake:

> To vary the terms of a writing on the ground of mistake, the proof must establish three elements. First, it must show that the mistake was mutual, not unilateral. Second, "[t]he mutual mistake must be proven beyond a reasonable controversy by *clear and convincing evidence.*" Third, "it must be shown that the parties had actually agreed upon terms different from those expressed in the written instrument."

> The mistake must be one as to a material fact affecting the agreement and not one of law, which is "an erroneous conclusion respecting the legal effect of known facts." A material fact is one that goes to the root of the matter or the whole substance of the agreement.

215 S.W.3d at 704 (internal citations omitted) (emphasis in original).

Cadleway first argues that reformation is inappropriate because Bayview failed to plead reformation in its Amended Complaint. Therefore, pursuant to Kentucky Revised Statutes (KRS) 413.120(12), Cadleway contends that the statute of limitations has run, foreclosing Bayview from asserting reformation. Cadleway also argues that reformation is inappropriate, because, as an innocent third party, it would be unfairly prejudiced by reformation of the Subordination Agreement. However, we note that Cadleway failed to comply with CR 76.12(4)(c)(v), which requires a statement in the brief as to how these issues were properly preserved for appellate review. Further, our review of the record indicates that these issues were not raised below. Accordingly, we will not address them for the first time on appeal. *Regional Jail Auth. v. Tackett,* 770 S.W.2d 225, 228 (Ky.1989).

■ Cadleway next argues that Bayview failed to present sufficient evidence showing that it was entitled to reformation of the Subordination Agreement. However, Cadleway presents no evidence challenging Bayview's evidence for reformation of the Subordination Agreement. As stated in *Hallahan v. The Courier–Journal,* 138 S.W.3d 699, 705 (Ky.App.2004), a party opposing a motion for summary judgment cannot rely merely on the unsupported allegations of his pleadings, but is required to present "some affirmative evidence showing that there is a genuine issue of material fact for trial." (*quoting Steelvest, Inc. v. Scansteel Serv. Ctr., Inc.,* 807 S.W.2d 476, 482 (Ky.1991)). Therefore, the only question on appeal is whether Bayview was entitled to reformation of the Subordination Agreement as a matter of law.

In support of its motion for summary judgment, Bayview attached Fach's affidavit. As noted above, Fach was the closing agent for InterBay and negotiated directly with Fifth Third regarding the Subordination Agreement. While Fach made a number of statements in her affidavit, there is only one statement relevant to show that the parties had actually agreed to terms different from those expressed in the Subordination Agreement and that the mistake was mutual. *See Abney,* 215 S.W.3d at 704. Specifically, Fach stated that during a telephone conversation with Fifth Third, it agreed to subordinate the First Mortgage to the Third Mortgage. Cadleway argues that this statement constitutes inadmissible hearsay and cannot be relied upon to show the intent of Fifth Third at the time the Subordination Agreement was entered into. We agree.

CR 56.03 states that affidavits may be used to determine if summary judgment is proper. However, CR 56.05 provides that these affidavits "shall set forth such facts as would be admissible in evidence...." Thus, to determine whether

the Master Commissioner and the trial court properly relied on Fach's affidavit, we must determine if Fach's statement constituted inadmissible hearsay. Hearsay is "a statement, other than one made by the declarant while testifying at the trial or hearing, offered in evidence to prove the truth of the matter asserted." Kentucky Rules of Evidence (KRE) 801(c). Bayview argues that pursuant to KRE 801A(c)(2), the statement in Fach's affidavit regarding Fifth Third's intent as to the Subordination Agreement is not inadmissible hearsay. KRE 801A(c)(2) applies to statements made by predecessors in interest and provides:

> Even though the declarant is available as a witness, when a right, title, or interest in any property or claim asserted by a party to a civil action requires a determination that a right, title, or interest existed in the declarant, evidence of a statement made by the declarant during the time the party now claims the declarant was the holder of the right, title, or interest is not excluded by the hearsay rule when offered against the party if the evidence would be admissible if offered against the declarant in an action involving that right, title, or interest.

Bayview argues that because this statement would be admissible against Fifth Third under KRE 801A(b)(1), (3), and (4), it is admissible against Bayview pursuant to KRE 801A(c)(2). We disagree.

While Fifth Third was the predecessor in interest of the First Mortgage, KRE 801A(c)(2) applies only to situations wherein a party is trying to establish that the declarant, as predecessor in interest, had "a right, title, or interest" in the property or claim in dispute at the time the declarant made the statement. Because the statement asserted by Fach in her affidavit is not asserted to prove that Fifth

Third had a right, title, or interest in the Third Mortgage at the time Fifth Third made the statement, KRE 801A(c)(2) does not apply. Instead, this statement is asserted to show the intent of Fifth Third at the time it entered into the Subordination Agreement. Accordingly, it is inadmissible and the Master Commissioner and the trial court improperly relied upon it in support of Bayview's motion for summary judgment. Thus, we conclude that without relying on this statement, the evidence was insufficient to establish Bayview's right to reformation of the Subordination Agreement by clear and convincing evidence.

In sum, we recognize that Cadleway failed to present any evidence challenging Bayview's evidence for reformation of the Subordination Agreement. We further recognize that Bayview may ultimately be entitled to reformation. But at this point in the proceedings, we must conclude that Bayview failed to establish that it was entitled to reformation of the Subordination Agreement as a matter of law. Therefore, summary judgment was not appropriate.

## CONCLUSION

Accordingly, we reverse the judgment of the Jefferson Circuit Court and remand for further proceedings on the issue of reformation of the Subordination Agreement.

COMBS, JUDGE, CONCURS AND FILES SEPARATE OPINION.

LAMBERT, JUDGE, DISSENTS AND FILES SEPARATE OPINION.

COMBS, Judge, Concurring:

This is a case in which the intent of the parties appears to be clearly implied by the facts and economic realities involved. Apparently, reformation of the recorded instruments because of a scrivener's error

would seem to be a proper resolution of the matter. And we are barred from decreeing that resolution.

As the majority opinion has ably reasoned, equity cannot be invoked to order a reformation of the instruments (*i.e.*, the mortgage books) because Kentucky case law has taken the "doctrine of scrivener's error" one step beyond the definition cited above from *American Jurisprudence.* The principal case on point, *Abney v. Nationwide Mutual Insurance Co.*, 215 S.W.3d 699 (Ky.2006), mandates a showing of "clear and convincing evidence" of mutual mistake before a court can order reformation of an instrument.

This Court has refrained from exercising or usurping the proper function of the trial court in ascertaining that requisite "clear and convincing evidence." As duly noted by our majority opinion, the affidavit of Ms. Fach was not a sufficiently reliable evidentiary basis upon which we could resolve this prolonged controversy. Thus, we have vacated the order of summary judgment for the parties to have the opportunity to clarify by adequate discovery the matters of fact set forth in her affidavit.

It may or may not be that the outcome will differ from the original judgment. But this is a classic example of the necessary restraint that an appellate court is compelled to exercise pursuant to the rule of civil procedure.

Parenthetically, alluding to the Civil Rules, I would note that the issue of the timeliness of filing the appeal in this case highlights the need for our Supreme Court to re-draft CR 77.04(4) in order to bring it into compliance and harmony with its holding in *Kurtsinger v. Board of Trustees of Kentucky Retirement Systems*, 90 S.W.3d 454 (Ky.2002). This issue should not have to be re-litigated needlessly as it had to be in this case.

LAMBERT, Judge, Dissenting:

I respectfully dissent and would affirm the judgment of the Jefferson Circuit Court in the case at bar.