RENDERED: MAY 2, 2025; 10:00 A.M.
NOT TO BE PUBLISHED

# Commonwealth of Kentucky

# Court of Appeals

NO. 2023-CA-1438-MR

DARRYL MILLER                                                    APPELLANT


APPEAL FROM JEFFERSON CIRCUIT COURT
v.        HONORABLE TRACY E. DAVIS, JUDGE
ACTION NO. 19-CI-07181


JAMES M. HART, JR. AS TRUSTEE
OF THE MARCELINE T. HART
TRUST AND JAMES BRENT HART                                       APPELLEE


OPINION
AFFIRMING

** ** ** ** **

BEFORE:   EASTON, ECKERLE, AND KAREM, JUDGES.

KAREM, JUDGE:  Darryl Miller appeals from an opinion and order of the

Jefferson Circuit Court granting summary judgment in a lease dispute to James

Brent Hart, individually and as the successor trustee of the Marceline T. Hart Trust

(collectively "Brent").[1]  Miller argues that the circuit court improperly relied on unauthenticated, unsworn, and uncertified documents and further erred in ruling that his affidavit contained inadmissible hearsay.  Upon careful review, we affirm.

As a preliminary issue, we note that the appellee Brent tendered a brief that was returned as deficient.  He was afforded the opportunity to file a compliant brief but did not do so.  He thereafter filed four successive motions for additional time to file a brief.  The first three of these motions were granted, but the final motion was denied by order of this Court on March 10, 2025.

In the absence of an appellee's brief, the Court may:

(a) accept the appellant's statement of the facts and issues as correct; (b) reverse the judgment if appellant's brief reasonably appears to sustain such action; or (c) regard the appellee's failure as a confession of error and reverse the judgment without considering the merits of the case.

---

[1] James Brent Hart succeeded his father, James M. Hart, as the trustee of the Trust.  James M. Hart passed away shortly before this action was filed by Miller.  The complaint nonetheless named as a defendant, James M. Hart as the trustee of the Trust, as well as James Brent Hart and Craig T. Hart, individually.  The late James M. Hart was never removed as a defendant. And, although Brent became successor trustee, Miller never substituted Brent as the trustee in the lawsuit.  Brent did file an answer, crossclaim, and counterclaim as an individual and as the successor trustee.  In its final order, the trial court stated that it was granting summary judgment to Brent individually and as the successor trustee.  His status as a party in his role as the trustee for the Trust was never challenged below and consequently, the issue is waived. *See Owensboro Nat'l Bank v. Department of Revenue*, 394 S.W.2d 461, 465 (Ky. 1965).  Because he was a party below, both as an individual and as the successor trustee, he is a party to this appeal in both these roles, even though he is named only in his individual capacity in the notice of appeal.  "Upon timely filing of the notice of appeal from a final and appealable order on all claims in an action, all parties to the proceedings from which the appeal is taken, except those who have been dismissed in an earlier final and appealable order, shall be parties before the appellate court." Kentucky Rules of Appellate Procedure ("RAP") 2(A)(2).  Craig T. Hart passed away on May 19, 2023, and was dismissed as a party to this appeal on August 20, 2024.

RAP 31(H)(3); s*ee also* former Kentucky Rule of Civil Procedure ("CR") 76.12(8)(c) (substantially similar to RAP 31(H)(3), which took effect on January 1, 2023). This Court has the discretion to decline to exercise any of the options listed in RAP 31(H)(3). *See Roberts v. Bucci*, 218 S.W.3d 395, 396 (Ky. App. 2007) (declining options in CR 76.12(8)(c)). In this case, we choose not to exercise any of these options because the resolution of this appeal is straightforward.

## FACTUAL AND PROCEDURAL BACKGROUND

On September 17, 2017, Miller entered into an agreement to lease some property ("the Property") in Louisville, Kentucky. Miller planned to renovate the Property and operate it as a barbershop. The Property belonged to the Marceline T. Hart Trust ("the Trust"). Miller met with James M. Hart ("James"), the original trustee of the Trust, and James's son, Craig T. Hart ("Craig") to discuss the lease. James was over ninety years of age at that time and, according to Brent, was suffering from mental and physical impairments. According to Miller, James told him he was the landlord of the premises, but Miller would have to deal with Craig to formalize the lease agreement which Craig would execute on James's behalf. Miller and Craig signed a written lease agreement that provided the total renovation cost of $15,000 "will be paid to Darryl Miller owner of Mr. Miller's Barber Shop in the event of the selling the property or if he decides to move." Rent was set at $550 per month, to increase by $100 every three years. The lease

stated that "[t]his agreement is being made between, James M. Hart Jr. . . . and Craig T. Hart . . . on this 17th day of September." The line designated for "Tenant" was signed by Miller and the line designated for Landlord or Landlord's Agent, the latter circled, was signed by "Craig T. Hart P.O.A."

Miller thereafter made his rent payments directly to Craig. Miller was unaware that James did not own the Property and that Craig was not James's attorney in fact. The Trust did not receive any of the rent paid by Miller. On April 23, 2019, Brent obtained an order of emergency guardianship for James and became James's attorney in fact and successor trustee of the Trust. James passed away on October 23, 2019.

Brent claims he first learned of Miller's lease of the Property in mid-2019. According to Miller, Brent sought to terminate his lease. When Miller refused, Miller claimed Brent changed the locks and excluded him from the Property.

In June 2020, Miller filed a complaint and an amended complaint alleging that Brent demanded he vacate the Property without providing proper notice or initiating formal forcible detainer proceedings. The complaint further alleged that James and Brent knew or should have known about the lease, and that by their acquiescence and/or inaction, they ratified Craig's actions as if they had been taken on behalf of the Trust. Miller's complaint included claims of wrongful

eviction, tortious interference with a lease by Brent, breach of the lease by Craig and/or the trustee, and unjust enrichment.

Brent, as the successor trustee and individually, filed an answer and counterclaim against Miller. He also filed a crossclaim against his brother Craig, eventually securing a default judgment of $111,089.25 on September 16, 2021.

Brent moved for summary judgment against Miller on August 5, 2021, arguing that Miller's claims failed because they were based on the unfounded premise that Craig had the authority to lease the Property. The circuit court denied the motion and gave Miller time to conduct discovery to determine to what extent, if any, Brent and James knew about the lease, possibly ratifying it by their inaction.

When Brent renewed the motion for summary judgment over a year later, on August 19, 2022, Miller had not conducted any discovery on the issue of lease ratification by inaction. However, Miller did submit an affidavit describing the meeting with James and Craig at the Property on September 17, 2017, wherein Miller asserted; first, that James specifically advised him that although he was the landlord of the premises Miller would have to deal with Craig in formalizing the written lease agreement; and second, that Craig would execute the lease on James's behalf. Subsequently, the court ruled that Miller's affidavit did give rise to a question of whether Miller lawfully relied on Craig's representation that he had

agency authority to act for James or the Trust. The order noted that Miller was seeking Craig's deposition testimony which could help resolve some of these issues. But Miller did not take Craig's deposition or inform the court why he was unable to do so.

On April 5, 2023, Brent renewed his motion for summary judgment. On May 19, 2023, Craig passed away. On December 6, 2023, the circuit court entered an opinion and order granting summary judgment to Brent. The court reiterated that the main issue was whether there was any evidence that Craig was acting with apparent authority on behalf of James, and therefore the Trust. The circuit court held that the statements offered in Miller's affidavit regarding what James said to him at the time the lease was signed were inadmissible hearsay and concluded that it did not appear possible that Miller could prevail on his alleged agency theory because "[t]here is no evidence on record, short of [Miller's] self-serving Affidavit, which supports this theory." The court noted that it had provided Miller with an opportunity to take Craig's deposition and to conduct discovery on the "ratification by inaction theory." It concluded: "Although the Court is to refrain from weighing the evidence at the summary judgment stage . . . after providing [Miller] with almost two years to conduct and complete discovery, as the record stands today, absent [Miller's] Affidavit, no facts exist which would make it possible for him to prevail."

As further grounds, the circuit court relied on CR 41.02 to dismiss Miller's claims for failure to comply with an order of the court, stating that Miller had offered no explanation as to why he failed to conduct discovery when the court twice granted him the opportunity to do so. The court held it could not discount the prejudice the defendants would suffer if Miller were allowed to rely upon statements made by Craig and James, both now deceased, in support of his case. It reiterated that Miller had ample opportunity to establish the truth of the statements he made in his affidavit but provided no reason or rationale for failing to follow the court's orders.

This appeal by Miller followed.

**STANDARD OF REVIEW**

In reviewing a grant of summary judgment, our inquiry focuses on "whether the trial court correctly found that there were no genuine issues as to any material fact and that the moving party was entitled to judgment as a matter of law." *Scifres v. Kraft*, 916 S.W.2d 779, 781 (Ky. App. 1996); CR 56.03. The trial court is required to view the record "in a light most favorable to the party opposing the motion for summary judgment and all doubts are to be resolved in his favor." *Steelvest, Inc. v. Scansteel Service Center, Inc.*, 807 S.W.2d 476, 480 (Ky. 1991). "[A] party opposing a properly supported summary judgment motion cannot defeat it without presenting at least some affirmative evidence showing that there is a

genuine issue of material fact for trial." *Id.* at 482. "Not every issue of fact or conflicting inference presents a genuine issue of material fact that requires denial of a summary judgment motion." *Grass v. Akins*, 368 S.W.3d 150, 153 (Ky. App. 2012). "An appellate court need not defer to the trial court's decision on summary judgment and will review the issue *de novo* because only legal questions and no factual findings are involved." *Hallahan v. The Courier-Journal*, 138 S.W.3d 699, 705 (Ky. App. 2004).

## ANALYSIS

Miller argues that the supporting documents Brent attached to the renewed motion for summary judgment were unauthenticated, unsworn, and uncertified, in violation of CR 56.05, which provides:

> Supporting and opposing affidavits shall be made on personal knowledge, shall set forth such facts as would be admissible in evidence, and shall show affirmatively that the affiant is competent to testify to the matters stated therein. Sworn or certified copies of all papers or parts thereof referred to in an affidavit shall be attached thereto or served therewith. The court may permit affidavits to be supplemented or opposed by depositions or by further affidavits.

The exhibits attached to Brent's second renewal of the motion for summary judgment consisted of Exhibit A: Brent's affidavit, dated 22 March 2023; Exhibit B: a copy of the lease agreement; and Exhibit C: a copy of Plaintiff's Responses/Objections to Interrogatories and Requests for Production,

-8-

with attachments. Miller himself produced the lease agreement as an attachment to his response to the second motion for summary judgment. Obviously, he also produced the discovery responses. Under these circumstances, his objection to these Exhibits lacks any foundation. The circuit court based its grant of summary judgment primarily on the fact that because James and Craig had both passed away, there was no evidence beyond the statements in Miller's own affidavit to support his allegations about the representations made to him at the time he signed the lease. Similarly, there was no evidence presented to support his contention that James and Brent ratified the lease because they knew or should have known about it but failed to act.

Our review of the record indicates that the circuit court afforded Miller ample opportunity to conduct discovery into the ratification theory and to take Craig's deposition in accordance with CR 56.06, which states:

> Should it appear from the affidavits of a party opposing the motion [for summary judgment] that he cannot for reasons stated present by affidavit facts essential to justify his opposition, the court may refuse the application for judgment or may order a continuance to permit affidavits to be obtained or depositions to be taken or discovery to be had or may make such other order as is just.

Miller did not follow the court's directives and did not state any reasons why he chose not to take advantage of the two occasions in which the circuit court denied summary judgment specifically to allow him to find some evidence to support his

claims. Craig, a key witness, passed away without Miller taking any steps to obtain his deposition.

> When the moving party has presented evidence showing that despite the allegations of the pleadings there is no genuine issue of any material fact, it becomes incumbent upon the adverse party to counter that evidentiary showing by some form of evidentiary material reflecting that there is a genuine issue pertaining to a material fact.

*Neal v. Welker*, 426 S.W.2d 476, 479 (Ky. 1968). The time afforded to a litigant under these circumstances is not unlimited:

> The curtain must fall at some time upon the right of a litigant to make a showing that a genuine issue as to a material fact does exist. If this were not so, there could never be a summary judgment since "hope springs eternal in the human breast." The hope or bare belief, like Mr. Micawber's, that something will "turn up," cannot be made basis for showing that a genuine issue as to a material fact exists.

*Neal*, 426 S.W.2d at 479-80. Furthermore, "[i]t is not necessary to show that the respondent has actually completed discovery [before summary judgment may be granted], but only that respondent has had an opportunity to do so." *Leeds v. City of Muldraugh*, 329 S.W.3d 341, 344 (Ky. App. 2010) (quoting *Hartford Ins. Group v. Citizens Fidelity Bank & Trust Co.*, 579 S.W.2d 628, 630 (Ky. App. 1979) (six months between filing of the complaint and granting the motion for summary judgment was sufficient opportunity to complete discovery). From the filing of the complaint until the second renewal of the motion for summary judgment, Miller

was afforded almost three years to make a showing that a genuine issue of material fact existed.  Because he did not make that showing and did not explain to the circuit court why he was unable to do so, the grant of summary judgment was well-founded.

Miller further argues that the circuit court erred in ruling that his affidavit contained inadmissible hearsay.  An affidavit based on hearsay is not adequate to defeat a motion for summary judgment:

> In Kentucky, all affidavits are not entitled to equal consideration or equal weight when considering a summary judgment.  Particularly, Kentucky Rules of Civil Procedure (CR) 56.05 provides that an affidavit in support of a motion for summary judgment "shall set forth such facts as would be admissible in evidence[.]" An affidavit containing inadmissible hearsay statements is insufficient and cannot be considered on a motion for summary judgment.  CR 56.05; *Cadleway Props., Inc., v. Bayview Loan Serv., LLC*, 338 S.W.3d 280, 289 (Ky. App. 2010).

*House v. Deutsche Bank National Tr. as Trustee for Wamu Series 2007-HE1 Tr.*, 624 S.W.3d 736, 744 (Ky. App. 2021).

In his affidavit, Miller stated:  "James specifically advised me that, while he was the Landlord of the Premises, I would have to deal with Craig as to formalizing a Written Lease Agreement and that Craig would execute the Lease on James's behalf."  The circuit court ruled that this key statement was inadmissible hearsay.  Miller argues that the court's ruling is erroneous under *Daugherty v.*

-11-

*Commonwealth*, 467 S.W.3d 222 (Ky. 2015). Daugherty shot her husband during

a physical altercation. She then assisted him to a car to take him to the hospital.

He told her to hide the gun because he was a convicted felon and was afraid of

getting in trouble. He died later at the hospital. Daugherty, who was charged with

murder and tampering with physical evidence, sought to introduce her husband's

statement telling her to hide the gun, in order to prove that she hid the gun at his

direction, not because she thought she was guilty of murder and was trying to hide

the evidence. The Kentucky Supreme Court held that the late husband's statement

was not hearsay.

> *Hearsay* does not mean any or all out-of-court
> statements; rather, *hearsay* means only "a statement,
> other than one made by the declarant while testifying at
> the trial or hearing, offered in evidence to prove the truth
> of the matter asserted." [Kentucky Rules of Evidence]
> KRE 801(c). And a statement consisting of a command
> to another person is not offered for the truth of the matter
> asserted. *See United States v. Bellomo*, 176 F.3d 580,
> 586 (2d Cir. 1999) ("Statements offered as evidence of
> commands or threats or rules directed to the witness,
> rather than for the truth of the matter asserted therein, are
> not hearsay."); *United States v. Thomas*, 451 F.3d 543,
> 548 (8th Cir. 2006) ("Questions and commands generally
> are not intended as assertions, and therefore cannot
> constitute hearsay.").
>
> Instead, a command, like a threat or a question, is a
> verbal act. *See White v. Commonwealth*, 5 S.W.3d 140,
> 141 (Ky. 1999) (noting the command "wait, don't leave
> me," as a "prime illustration of this usage"). The
> significance of the statement comes not from that which
> is asserted – the declarant's desire that the person carry

-12-

out the commanded act – but from the making and hearing of the statement. "'Instructions to an individual to do something are . . . not hearsay,' because they are not declarations of fact and therefore are not capable of being true or false."

*Daugherty*, 467 S.W.3d at 229-230.

The circuit court held that Miller's reliance on *Daugherty* was misplaced because the statements in the affidavit were not offered to show why Miller signed the lease with Craig, but to prove that Craig had James's express authority to execute the lease. "These are declarations of fact, offered to prove the truth of the matter asserted, that Craig was acting as James's agent. They are hearsay." We agree with this analysis. The statement in *Daugherty* was offered to show why the defendant hid the gun; the statement in Miller's affidavit was not offered to show why he signed the lease; rather, it was offered to show that Craig was acting as James's agent with James's approval.

## CONCLUSION

For the foregoing reasons, the opinion and order granting summary judgment is affirmed.

ALL CONCUR.

BRIEF FOR APPELLANT:                 NO BRIEF FOR APPELLEES.

Harry B. O'Donnell IV
Louisville, Kentucky

-13-